Mayer v. Journeymen Stonecutters' Association.

MICHAEL MAYER et al.

v.

THE JOURNEYMEN STONECUTTERS' ASSOCIATION et al.

1. This court has no jurisdiction to compel the admission of a person, not elected according to its rules and by-laws, to membership in a voluntary association.

2. Courts do not exercise visitorial powers over voluntary associations or their proceedings, except to prevent the violation of some law ·of the state, or to protect or enforce some right already acquired.

3. This court will not interfere by· injunction to prevent the circulation of a slander or libel, even though it may tend to injure the person affected in his business or employment.

4. This court will not interfere by injunction to restrain acts of an association, on the ground that they may be detrimental to trade or injurious to individual business, when it appears that the acts done or threatened are declared by statute as not unlawful.

5. Since the act of 1883 (*Rev. Sup. p. 774*) it is not unlawful in this state for the members of an association to combine together for the purpose of securing the control of the work connected with their trade, and to endeavor to effect such purpose by peaceable means.

On final hearing on bill, answer and proofs˙ taken in open court.

*Mr. Anthony Q. Keasbey*, for the complainants.

*Mr. William R. Weeks*, for the defendants.

GREEN, V. C.

The complainants comprise two classes—*first*, seventeen individuals and copartnerships, embracing all of the members of the Master Stonecutters' Association of the city of Newark, a voluntary association, not incorporated, composed of master stonecutters engaged in the business of cutting, dressing and selling stone for building and other purposes in the counties of Essex and Hudson; and, *second*, two individuals, Jacob Hahn and

Henry Zimmerman, who are alleged to be skilled journeymen stonecutters residing in Essex county.

The defendants are "The Journeymen Stonecutters' Association of Newark, Orange, Bloomfield, Avondale, and their vicinities," a voluntary association, not incorporated, and certain individuals the officers of said defendant association.

Under the act of 1883 (*Rev. Sup. p. 812 § 21*) the defendant association can be sued, by its recognized name, in an action affecting the common property or the joint rights or liabilities thereof; but no provision having been enacted to authorize voluntary associations to prosecute actions by their adopted names, it was necessary that the members of the complainant association should prosecute, in their individual names, for any infringement of any alleged right of the society.

The bill states that the defendant association was formed with the object, as expressed in the preamble to its constitution, of guarding and cherishing the trade which gives its members an honorable livelihood; but it does not state the purposes for which the complainant association was organized or why it is maintained, and, so far as the bill is concerned, we are left to surmise and conjecture as to those purposes and objects, and as to whether they are such as will subserve public interests and command the interference of the court to sustain and protect.

The relief prayed for in the bill is, that this court shall require the defendant association to admit Hahn and Zimmerman, and all other journeymen stonecutters residing in Newark and vicinity, to be members of the association, on paying the customary dues and fulfilling the rules imposed upon other members, and to give to each the customary card or other usual evidence of such membership; and (2) that the association, its officers and agents and stewards, be enjoined from denouncing Hahn and Zimmerman as "scabs," or in any manner persecuting or injuring them on account of their exercising their lawful trade without being admitted to such membership; and from attempting to coerce or intimidate the complainants, who are master stonecutters, or any other master stonecutters, from employing Hahn and Zimmerman or other skillful journeymen, whether members of said

association or not, by means of strikes, boycotts or other methods of violence or intimidation; and that an account may be taken of the damages and losses suffered by the complainants respectively, by reason of the action of the association defendant, its officers and agents, and that they may be decreed to pay the same, with a prayer for further relief.

This prayer for relief is based on the allegations that the master stonecutters complainants are, in the prosecution of their business, constantly in need of a body of skilled journeymen stonecutters, in order to enable them to fulfill their contracts; that Hahn and Zimmerman are such skilled journeymen stonecutters, desirous of obtaining employment at their trade, but prevented from doing so by the acts of the defendants complained of. These are recited substantially as follows, viz.: That it is the avowed purpose of the association defendant to embrace within its membership all the journeymen stonecutters who shall be permitted to pursue their trade in Newark and its vicinity; to prevent any journeyman stonecutter not a member of the association from working at his trade in Newark and vicinity; and to coerce any master stonecutter to refuse to employ any such journeyman not a member of the association. That the means adopted by the association to accomplish those objects are denunciations and persecution applied to the offending workmen, and boycotting and strikes applied to the offending employer.

That the by-laws adopted by the said association provide that any member who works in any place styled in the association as a "scab-shop," or who violates the constitution of the association, is to be denounced as a scab, and forfeits his claim as a member. That similar methods of coercion are employed by the association to prevent journeymen not members from working, and to deter employers from giving them work, by declaring the shops of such employers "scab-shops," and publicly declaring such workmen as "scabs," and also as to both such workmen and employers by resorting to strikes and boycotts.

That the by-laws of the association also provide for a "shop steward," to be placed in every master stonecutter's shop or yard, to see that the rules of the association are carried out; that,

under the practice and regulations of the association, such "shop steward" is required immediately to order a strike of all the workmen in any shop, if the employer allows any journeyman to work unless he produces a card of the association showing that he is a member thereof in good standing, and if such strike should prove inefficient, it is the policy and practice of the association to coerce the employer further by boycotting and other alleged unlawful deeds.

That in the month of May, 1889, or about that time, the association, by resolution, determined to admit no more members for the space of one year, thus excluding from employment all stonecutters seeking work not already admitted to membership; that in the summer of 1889 the complainants Hahn and Zimmerman, who reside in Essex county, with families dependent on their labor, applied for admission to said association, and offered to pay all dues and contributions, and to fulfill its obligations, in order that they might obtain work at their trade; but their application was refused on no other ground except the said resolution to exclude all new members; that afterwards Hahn and Zimmerman applied to two of the complainant master stonecutters for work as journeymen, but they were refused such employment on no other grounds than that they were not members of the association, and that their employment would result, under the rules of the association, in a general strike of the other workmen and in disaster to their business.

It is further alleged that, in consequence of their exclusion by said association, Hahn and Zimmerman have been deprived of the power of exercising their trade, in which they could have made a living and supported their families, and have been compelled to abandon their trade and work at inferior labor with lower wages; that two master stonecutters complainants were, at the time of the application by Hahn and Zimmerman to the defendant association for membership, in need of larger numbers of skilled journeymen stonecutters than they could obtain from among the members of the association, and would have given them employment, but from the danger to their business which they knew would ensue, and that for these reasons they were

obliged to refuse, and did refuse, to employ the two men; that Hahn and Zimmerman are able and anxious to exercise their trade for the support of their families, and that all of the master stonecutters complainants are in need of their services as stonecutters and willing to give them employment; that the two are only prevented from working, and said employers from giving them work, by the exclusion of them from the association, and the coercion of the employers to refuse them work because they are not members.

The bill asserts that the right of the two to exercise their trade is a right of property, and the right of the master stonecutters to employ laborers to work and needed in their business is also a right of property, and that the action and proceedings of the association deprive complainants of their said rights of property, and are subversive of the interest of society.

That the master stonecutters have, in consequence, been prevented from fulfilling certain contracts, which has been of considerable damage, and that the laborers have lost their wages, and that these injuries extend to all master stonecutters in Newark and its vicinity, as well as to all skilled laborers not members of said association.

It alleges that the complainants have no adequate remedy at law; that the injury is one continuing from day to day; that any attempt to seek redress by action at law would require a multiplicity of suits, in which their actual damages could not be repaired.

The defendants have answered the various allegations of fact set up in the bill, and also insist that the matters complained of are not such as entitle the complainants to any relief in this court, and that the relief prayed for is not cognizable by this court, and pray the same benefit of such defence as if they had demurred to the bill.

It appears that the complainants Hahn and Zimmerman did make some effort to obtain admission into the defendant association, but it is quite clear that they did not make application for membership regularly, as required by the by-laws, and that the question was never considered or passed upon by that body. But

if it were otherwise, has this court power to require the admission of a person to membership in a voluntary association, when it has been denied by the society?

These organizations are formed for purposes mutually agreed upon; their right to make by-laws and rules for the admission of members and the transaction of business is unquestionable; they may require such qualifications for membership and such formalities of election as they choose; they may restrict membership to the original promoters, or limit the number to be thereafter admitted. The very idea of such organizations is association mutually acceptable, or in accordance with regulations agreed upon; a power to require the admission of a person in any way objectionable to the society is repugnant to the scheme of its organization. While courts have interfered to inquire into and restrain the action of such societies in the attempted exclusion of persons who have been regularly admitted to membership, no case can, I think, be found where the power of any court has been exercised, as sought in this case, to require the admission of any person to original membership in any such voluntary association. Courts exist to protect rights, and where the right has once attached they will interfere to prevent its violation, but no person has any abstract right to be admitted to such membership; that depends solely upon the action of the society, exercised in accordance with its regulations, and until so admitted no right exists which the courts can be called upon to protect or enforce.

Neither is it clear upon what ground of jurisdiction the court can inquire into the action of the defendant association in the passage of the resolution complained of. It is alleged in the bill that this was to shut the door to admission to membership for one year, and to confine employment to the present membership. It appears from the testimony, however, that it was passed to prevent the admission of persons known as "harvesters." This is a term used in the trade to designate foreigners, skilled workmen, who come to this country when work is plenty and wages high, get employment, and in the winter return with their earnings to their homes in foreign countries; and that such was its

scope is shown by the fact that persons, not coming within that class, were admitted to membership after the passage of the resolution. In the light of national legislation, with reference to the importation of contract labor, it can scarcely be said that such action is against the policy of the law. But the body has clear right to prescribe qualifications for its membership; it may make it as exclusive as it sees fit; it may make the restriction on the line of citizenship, nationality, age, creed or profession, as well as numbers. This power is incident to its character as a voluntary association, and cannot be inquired into, except on behalf of some person who has acquired some right in the organization, and to protect such right.

This action being prosecuted by the complainants, other than Hahn and Zimmerman, as members of the complainant association, it must be considered as brought to protect some right or redress some wrong done to the association as such. There is nothing in the case to justify the aggregation of individuals and partnerships in the prosecution of the suit, save as members of such an association. We are, however, not advised what right of the association is attacked or sought to be enforced, as the bill is silent as to its objects, purposes, plans or property. It is true that an account is prayed of the damages and losses sustained by the complainants respectively, but there is no allegation of damage to any save Hahn and Zimmerman, except it may be, incidentally, Carr & Ball and Mayer & Son. No objection was raised to the misjoinder of parties, or to the suit as brought, presumably on the ground that it sufficiently appeared that the seventeen complainants were joined as individual members of the association, and in its behalf. If it was intended otherwise, it is sufficient to say, that the allegations of the bill do not bring the case within the rule which would sanction the joinder of different parties to prevent multiplicity of suits, as the same obtains in this state. *Marselis* v. *Morris Canal, Sax. 31; Davidson* v. *Isham, 1 Stock. 186; Hinchman* v. *Paterson Horse R. R., 2 C. E. Gr. 75; Morris and Essex R. R.* v. *Prudden, 5 C. E. Gr. 530; Demarest* v. *Hardham, 7 Stew. Eq. 469.*

The restraining power of the court is invoked to enjoin the defendant association, its officers and members, from denouncing the complainants Hahn and Zimmerman, by the use of an offensive appellation, from persecuting or preventing them from getting work, and from coercing or intimidating the other complainants from employing them, by the use of strikes, boycotts or other methods of violence.

If its just apprehension was important, it must be said, that there is nothing in the evidence to show that the defendants threaten to use any violence or commit any trespass, or do any overt, positive act of injury. It does appear that the members of the defendant association, by the scheme of the organization, agree to work only with those who are members of their union, and not to work in any shop or yard where such others are employed, and that they have adopted measures to elicit the facts and carry out their purpose, by the use of cards of membership, the appointment of shop stewards, and the withdrawal from work on the refusal of the employer to enter into their plans. It might be sufficient to say, that the complainant association has for years recognized the defendant association, and has co-operated with it to the extent of mutually agreeing upon a code of working rules, governing the members of both bodies and for the settlement of differences which might arise, and that such code is in force for the year 1890; that article 6 of such code provides that "no strike shall take place under any circumstances (except through the disagreement as to the yearly rate of wages), but all questions to be left to the arbitration committee, their decision to be final," and that prior to this suit the defendants had not violated, or threatened not to observe, the agreement thus entered into. Such result, however, would be most unsatisfactory, as it is evident the judgment of this court is desired on the question of its jurisdiction over the matters complained of.

This jurisdiction is invoked on the ground alleged, that the right of Hahn and Zimmerman to exercise their trade is a right of property, and that the right of the other complainants to employ laborers willing to work is also a right of property, and

that the anticipated acts of defendants tend to deprive complainants of such rights of property.

Lord Cairns, in *Prudential Assurance Co.* v. *Knott, L. R. (10 Ch. App.) 142* (at *p. 145*), in which jurisdiction was urged on similar grounds, says : " It is attempted to give a color to the application by saying that these libelous publications will injure property, and then, when that proposition is further defined, it is said that the business of the company—the good-will of the company—is property ; that the company in its trade will be injured, and that, therefore, the interference of the court is asked for the protection of property. But, with regard to nine out of ten libels, the same thing might be said. The cases in which actions are brought for libel are usually cases where things are written of men or corporations, which have an effect upon their character and upon their trade or business, or their character as connected with trade or business, but no case can be produced in which, in those circumstances, the court of chancery has interfered.

The effort to control employment and wages, by labor organizations, has come under the scrutiny of the courts, in England, from the time of the case of *The King* v. *Journeymen-Taylors of Cambridge, 8 Mod. 10,* and in this country, from the case of the *Boot and Shoemakers of Philadelphia,* in 1806, in many litigations to the present time, yet the industry, research and learning of the distinguished counsel of the complainants has furnished but one reported case where a court of equity has interfered to prevent or control the action of such organizations.

All of the reported cases, save three, referred to by counsel, were proceedings of a criminal nature either by information or indictment.

Counsel quoted at length from what was said by Judge Brown, in the case of the *Old Dominion Steamship Co.* v. *McKenna et al., 30 Fed. Rep. 48,* but this case, so far from sustaining the jurisdiction of this court, is an authority against it, establishing, as it does, that where such a combination is continued with injury an action at law will lie. In that case it was alleged that the defendants had entered into a combination to prevent the longshoremen from handling freight for the steam-

ship company, plaintiffs, and that such combination was continued with damage. An order of arrest and to hold to bail was made in the case, and it was on a motion to discharge such order and release the defendants that Judge Brown rendered his decision, holding that the action could be maintained, and that the men were properly held to bail.

The case of the *New York, Lake Erie and Western R. R. Co.* v. *Wenger*, reported in *17 Week. L. Bul. and Ohio L. J. 306,* was an action in the Cuyuhoga county court of common pleas of Ohio, the opinion being delivered by Judge Stone.

The syllabus of the report is:

"An injunction will lie to prevent a trespass. Men have a constitutional right ' to assemble together, in a peaceable manner, to consult for their common good,' but an assembling of men for the purpose of forming a combination and agreement to go upon the premises of a railroad company to obstruct, interrupt or stop its business, and prevent, by force, threats or intimidation, its employes from performing their duties, is an unlawful assembling.

" It is a trespass, for persons discontinuing work, to go upon the premises of a railroad company and interfere with its business, or, by force, violence, threats, intimidation or request, seek to induce employes to join in such strike."

It appears, by the report of the case, that the defendants had been employed by a railroad company, and that, being engaged in a strike, they from day to day entered the freight-yard and premises of the railroad company and interfered with the men who had been employed to work there, and that they had posted notices calling upon men to gather together, and again and repeatedly enter the premises of the railroad company. It was a case of continuing trespass, and the judge said : " From these facts it is clear, to my mind, that these men, when they went there, under the circumstances under which they went, were clearly trespassers, and it was altogether and essentially unlawful to go there, even seeking to compel, or urge or invite, other men to abandon their employment, and to thereby obstruct the business ; it is a trespass ; it is a wrong ; and when I say this, I do not mean to question the right of these men, off of the premises, by reasonable and peaceable means, to ask other men who have been with them in the employ of this company—their fellow-employes—to join with

them, or try to persuade them, by reasonable means, that it is for their benefit or advantage to go elsewhere, or to cease their employment; I do not question that right; I do not find it necessary in this case to question that right; but what I do hold to be a correct proposition is, that while out of the employment of this company in this case, or in any other case that may arise, the parties so ceasing employment have no right to go upon the premises, and by force or by violence, or by threats, or by intimidation or by request, ask other men to join them, or in any way interfere with or interrupt the progress of the business that is there being sought to be carried on," bringing the case clearly and distinctly within that well-recognized branch of equity jurisprudence, which will intervene by injunction to prevent a continuing trespass which threatens irreparable damage.

Counsel also referred to the case of the *Mogul Steamship Co.* v. *McGregor et al., 15 Q. B. Div. 476; 21 Q. B. Div. 544; 23 Q. B. Div. 598*, but that was an action to recover damages for a conspiracy to prevent the plaintiffs from carrying on their trade between London and China, and the application for an injunction was based on section 25, sub-section 8, of the Judicature act of 1873, by which a larger jurisdiction to grant injunctions than that possessed by the court of chancery has been given to the high court of justice (*Kerr Inj. (3d ed.) 1*), provision being thereby made that an injunction may be granted, by an interlocutory order of the court, in all cases in which it shall appear to the court to be just or convenient that such order should be made. The observation of Chief-Justice Coleridge, quoted by counsel from *15 Q. B. Div. 481*, that he did not see why an injunction might not issue, if certain facts were established, must be taken in the light of this enlarged jurisdiction, rather than the declaration that such jurisdiction was always exercisable by the court of chancery.

The other case referred to by counsel is referred to in *Wright & Carson's Law of Criminal Conspiracies and Agreements 179*, as having been decided in the United States circuit court for the district of Ohio, it being stated in the note that Judge Welker granted an injunction against strikers in such court. The name

34

of the case is not given and I am unable to find any such case, either in the United States circuit court reports or in any of the periodicals.

The case of *Springhead Spinning Co.* v. *Riley, L. R. (6 Eq.) 551,* in 1868, was an action brought by the plaintiffs, carrying on business as cotton spinners, against the officers of a voluntary association of operative spinners. Vice-Chancellor Malins granted an injunction to restrain the defendants from issuing placards and advertisements, which, it was alleged, had in fact intimidated and prevented workmen from hiring themselves to the plaintiffs, who were thereby prevented from continuing their business, and the value of their property was seriously injured and materially diminished. This case was not referred to by counsel, I suppose because it was overruled in the case of *Prudential Assurance Co.* v. *Knott, L. R. (10 Ch. App.) 142.*

So that, in the whole history of this long-continued struggle which has been going on between these combinations on the one hand, and the employers on the other, there is but one reported and unreversed case where a court of equity has, by its writ of injunction, attempted to control the action of these associations, and then only to prevent a continuing trespass upon the lands of the complainant. Of course, the well-known interference of the court for the protection of property, and the action of a receiver, appointed by it, of the property of an insolvent corporation, operated under the order of the court, and threatened by the action of such combination, stands upon an established and well-defined basis, to which no fact in this case can apply.

It is true that most of the cases cited by the learned counsel were prosecutions for combinations which at common law are held to be criminal, and it may be urged that as the court would not interfere by injunction to prevent the commission of crime, no case has been presented for adjudication. Without stopping to consider whether there are not well-established exceptions to the rule, I fail to appreciate the strength of the position that the court will interfere to prevent an act which is not unlawful, when it would not so interfere to restrain the doing of an illegal act.

Whatever may have been the rule of the common law with reference to such acts as are under consideration, and however criminal many of them have heretofore been considered, the legislature of this state has greatly changed the law which declared combinations to effect such purposes unlawful. By the act of 1883 (*Rev. Sup. p. 774 § 30*) it is provided that—

"It shall not be unlawful for any two or more persons to unite, combine or bind themselves, by oath, covenant, agreement, alliance or otherwise, to persuade, advise or encourage, by peaceable means, any person or persons to enter into any combination for or against leaving or entering into the employment of any person or persons or corporations."

In fact, the policy of the law with reference to such combinations was revolutionized, and what before that time would have been held to be an unlawful combination and conspiracy, became in this state a lawful association, and acts which had been the subject of indictment became inoffensive to any provision of our law. Nothing has been proved in this case to warrant a finding that the defendants have done or threatened aught that is not legalized by this act of the legislature. It is true that much of intent is charged in the bill which might overstep the boundary line defined by the law, but there is no evidence to sustain the assumption that any unlawful act to the injury of the complainants' rights of property is threatened by the defendants. They have agreed not to work with any but members of their association, and not to work for any employer who insists on their doing so, by withdrawing from his employment. So long as they confine themselves to peaceable means to effect these ends, they are within the letter and spirit of the law, and not subject to the interference of the courts.

These considerations result in the conclusion that this court has no jurisdiction to grant the relief prayed for, and that the bill must be dismissed.