The matter under consideration here is whether the counter-claim of the defendants upon motion by the complainant should be dismissed. After setting forth the history of Joseph Hollander, Incorporated, the defendant corporation, and that of the individuals who were instrumental *Page 579 
in organizing it, the counter-claim alleges in the ninth paragraph as follows:
"Several years last past the complainant, for the purpose of injuring the defendant Jos. Hollander, Incorporated, and in order to gain the customers, the trade and the business of the defendant corporation, or as much thereof as possible, fraudulently embarked upon a course of conduct designed to falsely disparage the goods of said defendant. The complainant and its servants and agents have made false statements as to the quality of its products and have informed its prospective purchasers and customers that if the latter purchased or dealt in any of said defendants' products, the complainant would refuse to sell its products to said customers, and if said customers already owed moneys to the complainant, it would demand the immediate payment of their obligations to the complainant. The complainant has circulated false statements, intending to injure the defendant corporation in its business and has conveyed untrue and dishonest statements to the customers of the defendant corporation for the purpose of injuring the defendant in its business and deceiving the public and the defendants' customers."
The foregoing is charged in the counter-claim to "evince a fraudulent attempt and purpose on the part of the complainant to obtain unlawful benefits and advantages from the defendants' business," done for the purpose of injuring the defendant corporation in its business and deceiving the public and the customers of the defendant corporation and to be unfair competition in trade, resulting in irreparable injury to the defendant company by way of damages present and future, the future damage being impossible of ascertainment.
The prayer for relief is as follows: "That the complainant, its officers, agents and servants, and all persons acting under it, be perpetually restrained and enjoined by the decree of this court from making, sending, uttering or communicating to any person, firm or corporation, any false, untrue and dishonest statements regarding the business of the corporate defendant, or any statements which injure the corporate *Page 580 
defendant in its business or deceive the public and the defendants' customers, or which disparage said defendants' products or any part thereof."
Concisely defendants allege: (1) Complainant and its servants and agents made false statements as to the quality of its products; (2) informed its prospective customers that if they purchased or dealt in defendants' products, complainant would refuse to sell its products to said customers; (3) if said customers owed moneys to complainant, it would demand the immediate payment of their obligation to the complainant; (4) complainant circulated false statements, intending to injure the defendant in its business and conveyed untrue and dishonest statements to customers of the defendant corporation for the purpose of injurying defendant in its business and deceiving the public and defendants' customers.
Allegations (2) and (3) afford no basis for equitable relief. Complainant undoubtedly possessed the right to refuse to sell its product, and to demand payment of obligations due it from customers, even under the circumstances alleged.
Considering now allegations (1) and (4) the solicitor for defendants in his argument upon and brief opposing the motion to strike, relies mainly upon two articles, one written by Dean Pound entitled "Equitable Relief against Defamation and Injuries to Personalty," wherein he reviewed authorities involving disparagement of goods and then wrote as follows:
"Looking back over these cases of injury to person or property by writing and publishing, we see that the English courts now deal with them as with any other torts; that in England the subject has had the very same development as equity jurisdiction over trespass, over disturbance of easements, and over nuisance. We also see that American courts are moving in the same direction, reaching such cases indirectly by laying hold of some admitted head of equity jurisdiction and tacking thereto what is in substance concurrent jurisdiction over legal injuries through publication. In some of the cases this is so obviously but a matter of pleading that *Page 581 
we may be confident some strong court presently will take the direct course and will be followed therein. Most of the cases that grant relief speak strongly of the injustice that must result from denial of jurisdiction in these cases. In substance, the traditional doctrine puts anyone's business at the mercy of any insolvent, malicious defamer who has sufficient imagination to lay out a skillful campaign of extortion. So long as denial of relief in such cases rests on no stronger basis than authority our courts are sure to find a way out." 29 Harvard Law Review640.
The other written by Harry D. Nims, author of "Unfair Competition and Trade-Marks" (third edition, 1929), and published in 19 Cornell Law Quarterly, No. 1 (December, 1933), 63 in which he sets forth the foregoing paragraph of Dean Pound and adds: "In the sixteen years since this was written apparently no `strong court' has been willing to `take the direct course' * * *."
Whether or not the defamatory matter set forth in (1) and (4) was directed against the product of the defendants or injured them in the exercise of property rights or impaired their good will, the court of chancery is without jurisdiction to grant relief.
In Prudential Assurance Co. v. Knott, L.R. 10 ChanceryAppeal Cases 142, the defendant published a pamphlet on life assurance companies, in which he gave statistics and calculations as to the principal offices, their incomes, rates of premiums, expenses of collection, and ratio of assets to liabilities. He commented on the state of several companies, including plaintiff's. The plaintiff filed bill against defendant charging that the effect upon it was to represent the company as being managed with reckless extravagance, and as being in a state of insolvency and unable to fulfill its engagements; that the representation was untrue; that the company was prosperous, abundantly solvent and earning large profits. Further the bill charged that the publication of the pamphlet and statements therein would be very injurious to the company and would damage its business and prayed that the publication of the pamphlet be restrained. *Page 582 
Vice-Chancellor Hall refused injunction, and plaintiff appealed. Lord Cairns, L.C., said: "I am of opinion that there is no ground whatever for the interference of the court in this case. * * * Now, the comments and expressions in this pamphlet either do amount to a libel upon the company, or do not. If they do not amount to a libel, and are therefore innocuous and justifiable in the eye of a court of common law, I am at a loss to understand upon what principle the court of chancery could possibly interfere as a censor morum or critic to restrain the publication of statements or expressions which would be held justifiable in a court of common law. If, on the other hand, these comments do amount to a libel, then, as I have always understood, it is clearly settled that the court of chancery has no jurisdiction to restrain the publication merely because it is a libel * * *.
"It is attempted to give a colour to the application by saying that these are libelous publications which will injure property, and then, when that proposition is further defined, it is said that the business of the company, the good will of the company, is property; that the company in its trade will be injured, and that, therefore, the interference of the court is asked for the protection of property. But with regard to nine out of ten libels, the same thing might be said. The cases in which actions are brought for libel, are usually cases where things are written of men or corporations, which have an effect upon their character and upon their trade or business, or their character as connected with trade or business; but no case can be produced in which, in those circumstances, the court of chancery has interfered Not merely is there no authority for this application, but the books afford repeated instances of the refusal to exercise jurisdiction."
In Francis v. Flynn, 118 U.S. 385, the United States supreme court, by Mr. Justice Field, reversed the lower court, which had granted an injunction to the complainant who alleged that the respondents had confederated to destroy his business and property by publications in newspapers, by instituting suits, by seeking injunctions, and in divers other ways; *Page 583 
and that respondents had agreed together not to do business (as branch pilots) with those not included in the "confederation." Judgment was entered for the complainant on defendant's demurrer below. The court held that the plaintiff had a complete remedy in the courts of law if there was a criminal interference with its business, and, if the publications are false and injurious he could prosecute the publishers for libel, and that the demurrer should have been sustained.
In Kidd v. Horry, 28 Fed. Rep. 773, Mr. Justice Bradley reviews the English and American decisions up to his time and finds that the right to enjoin a libel has never inhered in the court of chancery; that this has always been recognized by both the English and American cases; that the English courts now grant relief by way of injunction, but only by virtue of statute (a common law procedure act of 1854, viz., 17, 18 Vict. ch. 125 §§79, 81, 82). The court cites Lord Chancellor Cairns in the case of Prudential Assurance Co. v. Knott, supra, and adds, "if this decision has since been overruled, it is only because of an enlarged jurisdiction conferred upon the English courts by the statute referred to, and is a standing authority as to the general law independent of legislation."
"Equity will not restrain by injunction the threatened publication of a libel, as such, however great the injury to property may appear to be. This is the universal rule in the United States and was formerly the rule in England. The present rule in England contra rests on statute." 5 Pom. Eq. Jur.
(2d ed.) § 2050. The author, in section 2052, referring to the decision of Lord Cairns in Prudential Assurance Co. v.Knott, says: "To-day in England, as a result of parliamentary acts, equity will restrain the publication of a libel as such * * *." He refers in a footnote to the Common Law Procedure act of 1854 and the Judication act of 1873, section 25, subdivision 8.
In Mauger v. Dick, 55 How. Pr. 132, 134, the plaintiff sought to restrain the defendant from interfering with the plaintiff's business by threats, circulars and suits. The defendant made and sold capsules and employed the plaintiff *Page 584 
in the manufacture and sale, who, after a short time, left Dick's employ and started his own business. Thereafter the defendant issued a circular saying: "Certain parties are infringing our trade-mark rights by seeking to place on the market imitations of our soft capsules," c., and threatening to punish "any encroachment on our rights." It was there held that "the jurisdiction of a court of equity does not extend to false representations as to the character or quality of the plaintiff's property, or to his title thereto, when it involves no breach of trust or contract, nor does it extend to cases of libel or slander. Equity jurisdiction to restrain the use of a name, trade-mark or letters, rests upon the ground of plaintiff's property in his name, trade-mark or letters, and the unlawfuluse thereof." Judge Gray held the same in Boston Diatite Co.
v. Florence Manufacturing Co., 114 Mass. 69.
In Mayer v. Journeyman Stonecutters' Association, 47 N.J. Eq. 519,
Vice-Chancellor Green held that this court will not, by injunction, prevent the circulation of a slander or libel, even though it may tend to injure the person affected in his business or employment, citing Prudential Assurance Co. v. Knott.
The motion to dismiss the counter-claim is granted.