Complainant owns a chain of lunch rooms or restaurants including one in Newark. Last April, the business agent of defendant sent complainant a letter stating that the Union had completed organization of the employes in the Newark *Page 120 
store and, "We are desirous of conferring with the representatives of your company as to wages, hours and working conditions of these employes, members of this organization." Complainant ignored the communication with the result that a few of its employes went on strike and picketing commenced. Complainant promptly filled their places with other men and sought and obtained an injunction against picketing under the rule of Mode Novelty Co. v. Taylor, 122 N.J. Eq. 593.
The Union, obedient to the injunction, called off its pickets but took other measures in its controversy with complainant, which are the subject of a supplemental bill, and of a motion for additional interlocutory restraint.
Complainant's store is on the south side of Market street, about two hundred and twenty-five feet west of Broad street. These two streets are among the busiest in Newark. Along their sidewalks pass a never-ceasing throng of people, while the roadways are crowded with buses and other vehicles. The Union engaged men to walk up and down Broad street at and near Market street, carrying signs which proclaimed "Thompson's Restaurant is unfair to Cafeteria Workers Union, Local 410, A.F. of L.," and distributing handbills which read:
"Please do not patronize Thompson's Restaurant. Five employes of Thompson's Restaurant went on strike April 22nd because the company refused to grant collective bargaining rights, in accordance with the laws of this state. Help maintain Union conditions in Newark. Eat where the Union emblem is displayed. Delicatessen Cafeteria Workers' Union, Local 410, A.F.L."
Complainant is undoubtedly injured in its business by this publicity for, as it shows, many of its patrons are union members or sympathizers with labor unions and will not eat at its restaurant if they are aware that it is having a dispute with defendant. Complainant prays that the display of the placards and the distribution of the handbills be enjoined.
The present activity of defendant is in no sense picketing, as that term is used in our decisions. The agents of the Union do not use the street in front of complainant's store and they are unable to press themselves especially on the *Page 121 
attention of complainant's employee or of people about to enter the restaurant. The situation would be different if Market street were a country lane so that the Union agents at the corner of Broad street could watch who enter or leave the restaurant and single them out for their missionary effort. But in the crowd of people on the streets, this is impossible. If a handbill be given to a person who sometimes goes to complainant's restaurant, it is merely accidental. Complainant is no more injured than if defendant inserted an advertisement in a newspaper.
Complainant argues that it is entitled to relief because the words used are false and libelous. The rule, however, is well established that a court of equity will not restrain a libel or slander even though it may tend to injure complainant in his business. Mayer v. Journeymen Stonecutters' Association,47 N.J. Eq. 519; A. Hollander Son, Inc., v. Joseph Hollander,Inc., 117 N.J. Eq. 578. In the first of these cases, defendants called the complainants "scabs" and so made it difficult for them to obtain employment, but Vice-Chancellor Green dismissed their bill. In the second case, which arose on a counter-claim, the complainant circulated among defendant's customers false statements as to the quality of its products, for the purpose of injuring defendant in its business. Vice-Chancellor Stein dismissed the counter-claim on the ground that "this court will not, by injunction, prevent the circulation of a slander or libel even though it may tend to injure the person affected in his business or employment."
Complainants next say that defendants are fomenting a boycott by their signs and circulars, and that this is illegal. My views on the subject, with citation of earlier cases, were stated inPerfect Laundry Co. v. Marsh, 120 N.J. Eq. 508 (reversed on another point, 121 N.J. Eq. 588). "The object which the strikers have in view, higher wages, is lawful, of course, and one which will justify their actions, if any object can do so. They may present their cause truthfully to the public by placards, or circulars, or by speech, and their employer may do the like. According to the great weight of authority, they may appeal to friends, to customers, and to the public generally, to assist them by refusing to deal *Page 122 
with their employer. If the effect is ruin to the employer, it isdamnum absque injuria. But the law does not permit appeals based on falsehoods or supported by coercion. The persuasion that the law allows is addressed to reason or sentiment and leaves the will free to choose." Vice-Chancellor Egan expressed a similar opinion in Evening Times and Printing, c., Co. v. AmericanNewspaper Guild, 122 N.J. Eq. 545: "Defendants have a right to present their cause to the public, provided that the presentation be made in a lawful manner and without coercion or intimidation." See, also, Newark Ladder, c., Co. v. Furniture Workers,125 N.J. Eq. 99.
The Evening Times Case illustrates the law relating to boycott. Striking newspaper employes sought to put pressure on their employer by inducing the people not to buy the newspaper and by persuading business men not to advertise in it. "But," as already pointed out, "the law does not permit appeals based on falsehoods or supported by coercion." The strikers picketed business firms that continued to advertise in the Times, and this the court considered coercion and enjoined. Also the strikers used a truck upon the streets of Bayonne, carrying a loud speaker which blared out the strikers' alleged wrongs. The court of errors and appeals (124 N.J. Eq. 71) while permitting the use of the loudspeaker, forbade the utterance of misrepresentations and the epithet "scab" applied to the newspaper.
The cases which I have cited dealt with boycotts in aid of existing strikes. In the controversy before me, the strike is over and no picketing at complainant's restaurant may be permitted. Feller v. Local 144, c., 121 N.J. Eq. 452. But picketing is considered by our courts as an extreme measure, justifiable only as an incident of a strike. Vice-Chancellor Bergen said that, "In its mildest form, it is a nuisance."George Jonas Glass Co. v. Glass Bottle Blowers' Association,72 N.J. Eq. 653, 663. And Vice-Chancellor Berry suggested inElkind Sons, Inc., v. Retail Clerks, c., Association,114 N.J. Eq. 586, 595, that the legislature is powerless to legalize it. While the legality of peaceful picketing, as an aid to a lawful strike, is now fully established, the old *Page 123 
distaste of our courts for picketing still is influential to the extent of banning picketing except during a strike. But a labor union, although no strike exists, may seek public sympathy and aid. They may ask the public not to patronize the employer with whom the union is at odds.
Clearly the defendant is guilty of no coercion of persons who may wish to patronize complainant. And I think the placards and handbills are free of material misrepresentation. They charge that complainant is unfair to the Union. The word which I have emphasized misleads no one; it is recognized generally as a characterization of an employer who refuses to conduct his business in the manner desired by the union. It is notice of a dispute.
Defendant is undoubtedly in the midst of a controversy with complainant. It wants complainant to reinstate the strikers, to raise their wages and to shorten their hours. It wants complainant to cease dissuading its employes from affiliating themselves with defendant union. Complainant refuses.
The handbills allege that five of complainant's employes struck "because the company refused to grant collective bargaining rights, in accordance with the laws of this state." I think this means nothing more than the fact that complainant refused to negotiate, to bargain, with the union of which the five employes were members. The concluding reference to the law of New Jersey is, perhaps, erroneous, but not deceptive.
When a court of equity grants an injunction in a case of this kind, it hampers the defendants in the presentation of their cause to the public; it touches rights dear to every American — free speech and free press. The court should not grant the injunction unless the language of defendants is clearly false and used deceitfully.
An injunction against defendant's activities on Broad street will be denied. Restraint against picketing will be continued and, if either counsel thinks it desirable, a certain distance up and down Market street will be specified within which defendant's agents may not go, in their campaign against complainant. *Page 124