20 N.J. Super. 522 (1952)
90 A.2d 126
KATHRYN DEVINE, PLAINTIFF,
v.
HELEN DEVINE, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided July 3, 1952.
*523 Mr. Frederick F. Richardson, attorney for plaintiff.
Messrs. McKeown, Schreiber, Lancaster & Demos (Mr. Maurice J. McKeown appearing), attorneys for defendant.
*524 EWART, J.S.C.
The plaintiff, daughter-in-law of the defendant, by her complaint seeks the aid of this court and demands a judgment "enjoining and restraining the defendant, Helen Devine, from the doing of any acts designed or having the effect of maliciously and improperly interfering with the marital relations between the plaintiff and her husband, or to in any wise do and perform any acts seeking to further alienate the affections of the plaintiff's husband or to do or perform any acts designed to harass and terrorize the plaintiff and prevent her from endeavoring to preserve her marital status for herself and her expectant child in a proper and lawful manner."
The complaint alleges that plaintiff was married to John Devine, son of the defendant, on August 5, 1950; that she and her husband resided together happily until the latter part of June 1951; that on June 18, 1951 plaintiff's husband was inducted into the U.S. Army Air Force, and stationed at Langley Field at Virginia for training; that plaintiff was employed at Rutgers University in New Brunswick and could only see her husband on week-ends; and that her husband drove his car from Virginia to New Brunswick on a week-end at the end of June 1951 and invited her to return in the car with him to Virginia for the week-end, but that she was compelled to refuse because of the length of the trip and the necessity of her being at work at 9:00 A.M. on the Monday morning following. The complaint charges that the defendant took offense at the plaintiff's refusal to spend the week-end with her husband in Virginia and, shortly after the husband's departure, telephoned the home of plaintiff's parents and became noisy, threatening and abusive over the 'phone, accusing plaintiff's parents of interfering with her son and the plaintiff; made insulting remarks over the 'phone, and threatened to go to the home of the wife's parents "to straighten them out once and for all." It appears that while the plaintiff was not living with her parents, she was visiting there at the time and that plaintiff took the telephone and attempted to explain the matters to the defendant, but *525 the latter refused to listen and the conversation was discontinued abruptly. The complaint further charges that a short time after the occurrences above mentioned the defendant gave plaintiff's husband a false account of the foregoing occurrences and maliciously and falsely informed plaintiff's husband that she, the defendant, had been grossly insulted on the 'phone by the plaintiff and by the plaintiff's family; that they had sworn at her and treated her discourteously; that her good name had been compromised; that she had been humiliated by the family of the plaintiff; that the family honor of plaintiff's husband had been reflected upon by the occurrences above mentioned; that the plaintiff was evading and not performing or fulfilling her obligations as a wife should; that the plaintiff had made untrue and harmful remarks about her, the defendant; that the plaintiff was otherwise unfit to continue to live with her husband as his wife; that henceforth the defendant would not permit the plaintiff to come into her home and would not be recognized or treated by the defendant as the wife of her son; for all of which the defendant demanded satisfaction of her son. The complaint further charges that as a result of the foregoing statements and actions of the defendant, quarrels developed between the plaintiff and her husband and that the husband, on or about October 4, 1951, deserted and abandoned the plaintiff who by that time was pregnant, and that plaintiff's husband had refused to maintain, provide for and support her as he was legally obliged to do and otherwise disregarded her status as his lawful wife. The complaint charges such desertion, abandonment and refusal to support was caused by the false statements and improper representations maliciously made by the defendant to her son as aforesaid and that the same were made for the purpose of interfering with and destroying the marital felicity then existing between the plaintiff and her said husband. And the complaint further charges that by reason of the matters above recited, the plaintiff has been deprived of the support of her husband; has been receiving no financial help of any kind from him since *526 October 1951, despite the fact that he receives substantial compensation for his services in the Air Force; and that the plaintiff's husband is now (at the time of filing of the complaint) in the U.S. Air Force stationed in Korea. The complaint further charges that the defendant, as a result of her malicious, fraudulent, deceitful and false representations to her son, has secured through her son an allotment of $100 from the Government on account of the son's service in the Air Force and that by reason of the defendant's actions she, the plaintiff, has been deprived of an allotment which her husband might otherwise have made for her benefit and has been deprived of other Government benefits such as insurance, etc.
The complaint further charges that defendant's interference with the plaintiff and her husband was malicious, illegal and improper and was designed to separate the plaintiff and her husband and to have the plaintiff's husband return to his mother. And the complaint further charges that on various occasions between June and October of 1951, while the plaintiff was alone in her apartment, the defendant telephoned at various and sundry times during the night time and aroused the plaintiff and then when the plaintiff arose and answered the 'phone the person who called would hang up (how the plaintiff knew it was the defendant who telephoned does not appear). Plaintiff says that such conduct by the defendant created fear and dread in the plaintiff's mind; caused her apprehension and distress; that the plaintiff became terrified and despondent, sick, disabled and bewildered, and has been compelled to seek relief from the court.
It is to be noted that the complaint in this cause was filed March 29, 1952; that the acts complained of extended from the latter part of June 1951 until the month of October 1951; that the plaintiff's husband has been in the armed services all during that period and, at the time of filing the complaint, was stationed in Korea, although just when plaintiff's husband was first sent to Korea does not appear by the allegations of the Complaint.
*527 Defendant, before answering, has moved to dismiss the suit because of lack of jurisdiction of the subject matter of the complaint and because the complaint fails to state a claim against the defendant upon which relief can be granted.
The gist or gravamen of this suit, as I read the complaint, is for the loss by the plaintiff of her husband's consortium by which is meant loss of marital affections, comfort, society, assistance and services. Grobart v. Grobart, 5 N.J. 161, 165 (1950). The suit appears to be grounded upon the alleged alienation of the affections of the plaintiff's husband by the false and malicious statements and misconduct charged to his mother, the defendant.
The plaintiff has no adequate remedy at law since the enactment of the "Heart Balm" statute, L. 1935, c. 279, R.S. 2:39A-1. That statute, as a matter of public policy, has outlawed suits for damages for alienation of affections. The statute was held constitutional in Bunten v. Bunten, 15 N.J. Misc. R. 532 (Sup. Ct. 1937). However, the statute is in derogation of a common law right; is to be strictly construed and not stretched to cover more than its plain language would justify; and there is nothing in the statute that would prohibit a suit for injunctive relief as distinguished from a suit for money damages.
This suit was filed March 29, 1952. The latest offensive act charged to the defendant in the complaint is during the month of October 1951. Injunction is primarily a preventive remedy intended to afford relief against future acts or conduct which are against equity and good conscience, and to preserve and keep a thing in statu quo, rather than to remedy what is past and done or to punish for wrongs already committed. Society for Establishing Useful Manufacturers, etc. v. Morris Canal and Banking Co., 1 N.J. Eq. 157, 191 (Ch. 1830); Attorney General v. N.J.R.R. and Transp. Co., 3 N.J. Eq. 136 (Ch. 1834); 28 Am. Jur., sections 3 and 5, pages 198-199; 4 Pom. Eq. Jur. (5th ed.) sec. 1337.
Offensive acts alleged to have been committed by the defendant between June and October of 1951 cannot be *528 remedied by a suit for injunctive relief filed on March 29, 1952.
Nor, where no breach of trust or of contract appears, will equity ordinarily enjoin libelous or slanderous statements injurious to the plaintiff. Mayer v. Journeymen Stone Cutters' Ass'n., 47 N.J. Eq. 519 (Ch. 1890); A. Hollander & Son, Inc. v. Jos. Hollander, Inc., 117 N.J. Eq. 578 (Ch. 1935); John R. Thompson Co., Inc. v. Delicatessen and Cafeteria Workers Union, etc., 126 N.J. Eq. 119 (Ch. 1939); Weiss v. Levine, 133 N.J. Eq. 441 (Ch. 1943); 28 Am. Jur. section 119, page 312.
The extraordinary relief by injunction is not granted as a matter of course, but rather rests in the sound discretion of the court depending upon the facts and circumstances of each particular case. It is a remedy which should be exercised sparingly and cautiously and should be awarded only in clear cases reasonably free from doubt. 28 Am. Jur. section 3, page 198; section 24, page 217; section 35, page 230. As was said by the court in Citizens Coach Co. v. Camden Horse Railroad Co., 29 N.J. Eq. 299, at page 303 (Err. & App. 1878):
"There is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, and which is more dangerous in a doubtful case, than the issuing of an injunction."
That statement has been cited with approval in numerous subsequent decisions.
In the case sub judice, the chief complaint is that the defendant, with malice, has in the past communicated to her son, husband of the plaintiff, false stories about and concerning the plaintiff; has expressed to her son injurious criticisms of the plaintiff; and by her words and conduct has brought about a rift between the plaintiff and her husband and has damaged or destroyed the marital structure, by reason whereof plaintiff has suffered the loss of her husband's affections, society, aid and assistance and other material benefits which she might have reasonably expected from him.
*529 Plaintiff does not ask, nor could she reasonably do so, that defendant be prohibited from communicating with her son by letters or other means of communication while he is stationed in Korea or by visits and conversations when he may be at home. Rather it appears that the plaintiff would have the court censor the written or verbal communications by the defendant to her son and restrain and enjoin the defendant from making adverse comment or criticisms of the plaintiff to her son, and from telling any false stories or disseminating any false information to the son of, about and concerning the plaintiff. Just how the court could enforce such an order, were an injunction granted, is not clear and the enforcement of such an injunction would appear to present insurmountable difficulties. Communications between a mother and son would ordinarily be private and confidential and not open to inspection or examination.
Equity has always regarded the problem of enforcing its judgment or decree as an important factor in determining whether injunctive relief is appropriate. Such relief may be denied when, though otherwise appropriate, the judgment or decree would not be enforceable because of the inherent difficulties involved in the enforcement. 4 Restatement, Law of Torts, section 814 (g), page 177, and section 943, page 721. And injunctions against torts perpetrated wholly or in part by means of spoken or written words present special difficulties of enforcement and an injunction to prohibit words or conduct resulting in alienation of affections would probably only serve to add fuel to the flame. Idem, pages 737 et seq. And to the same general effect, see 28 Am. Jur., section 23, page 217, and Virginian Ry. Co. v. System Federation No. 40, etc., 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (C.C.A. 4, 1937).
In 28 Am. Jur. section 23, page 217, it is stated:
"A court of equity will not issue an injunction where it has no power to enforce it, nor will it attempt to grant injunctive relief which would be inefficient or of no avail to those seeking it."
*530 In Virginian Ry. Co. v. System Federation No. 40, etc., supra, Justice Stone said:
"It is true that a court of equity may refuse to give any relief when it is apparent that that which it can give will not be effective or of benefit to the plaintiff. * * * Whether the decree will prove so useless as to lead a court to refuse to give it, is a matter of judgment to be exercised with reference to the special circumstances of each case rather than to general rules which at most are but guides to the exercise of discretion." (300 U.S. at page 550, 757 S.Ct. at page 601.)
Under the facts and circumstances disclosed in the complaint, which for the purpose of this motion are to be taken as true, I feel constrained to grant defendant's motion to strike the complaint and dismiss the suit for these reasons:
(1) The complaint for an injunction was filed March 29, 1952, whereas the last act complained of occurred in October of 1951. The complaint does not allege facts showing a reasonable apprehension on the part of the plaintiff that the acts complained of will be continued in the near future. Equity does not grant injunctions to remedy unlawful acts already committed, but only to prevent future wrongs threatened or reasonably anticipated.
(2) A court of equity will not ordinarily enjoin the making or circulation of false and slanderous statements and the gist of the charge in the complaint is that the defendant has been guilty of making false and slanderous statements of and concerning the plaintiff to the plaintiff's husband who is the son of the defendant.
(3) The difficulties inherent in the enforcement of an injunction prohibiting the defendant from communicating to her son, the plaintiff's husband, adverse comment, criticisms or false statements of and concerning the plaintiff, are such as to render the injunctive order futile and unenforceable. The court has no means of censoring the communications that may take place between the defendant mother and her son. An injunction that would be ineffective or futile ought not to be granted in any case.
Judgment will accordingly go for the defendant.