592 P.2d 788

**Melvin KOEHLER and Thelma Koehler, Appellants,**

**v.**

**Gary Leigh KOEHLER, Appellee.**

**No. 1 CA–CIV 3938.**

Court of Appeals of Arizona, Division 1, Department B.

March 13, 1979.

Andersen & Schatz, P. A. by David K. Schatz, Joe V. Andersen, Chandler, for appellants.

Leibsohn, Eaton, Gooding & Romley, P. C. by Joe M. Romley, Phoenix, for appellee.

OPINION

SCHROEDER, Presiding Judge.

This is an appeal from an order permanently enjoining appellants, Melvin and Thelma Koehler, from attempting to contact or communicate with their young granddaughter. The order was entered at the request of their son, appellee, Gary Leigh Koehler, the child's father. The case involves a question of first impression in Arizona regarding the respective rights of parents and grandparents.

The child, Shannon Koehler, was born in 1969. Shortly thereafter, her parents were divorced. Nine days after the child's birth, she was delivered to appellants, Gary's parents, who cared for her in their home for the next several years. During at least some portion of those years, between 1969 and 1974, appellee Gary Koehler also resided in that home. The parties throughout that period had an informal understanding that Gary would take physical custody of the child when he had a suitable home for her.

In November of 1974, Gary took Shannon for a visit and refused to return her to his parents. The appellants immediately sought a temporary injunction returning the child to their home. The court issued this injunction which was enforced by sheriff's deputies who took Shannon away from her father and returned her to the appellants. This was one of numerous incidents reflected in the record, including a physical tussel over the child, demonstrating the bitterness which had developed between Gary Koehler and his parents.

In January, 1975, the appellants filed a petition seeking exclusive legal custody of the child. In June, 1975, Gary took Shannon from appellants' home to his own. Since that time the girl has lived with her father. In September, 1975, after an informal hearing, the appellants were advised that the child's permanent legal and physical custody would be placed with Gary. In December, 1975, Melvin and Thelma Koehler filed a motion requesting a hearing to resolve the question of their visitation rights. Apparently no hearing was ever held on that request.

Approximately a year later, Gary petitioned for an order restraining his parents from attempting to contact or communicate with the child, and this appeal is from the trial court's entry of such an order. This order and the previous orders were all entered in the divorce action between Gary Koehler and his former wife, although she is not a party here. Appellants have been treated as parties in many of these proceedings. See A.R.S. § 25–332(A)(3).

The record before the trial court fully reflects the deterioration of the relationship between Gary and his parents, Thelma and Melvin. It is less enlightening, however, as to the relationship between the grandparents and their granddaughter, Shannon. The testimony on behalf of Gary Koehler indicated that the child was fearful of strangers and that this was attributable to the episode when appellants utilized sheriff's deputies to enforce an order regarding her custody. Appellant Thelma Koehler apparently spoke with some of Gary's neighbors, but the substance of those discussions is not fully indicated. She also attempted to visit the child at school and to ride with her on the school bus. These attempts at communications were apparently upsetting to the child. The record also shows, however, that the appellant ceased such efforts after learning that they were in violation of school rules. Thelma Koehler attended graduation exercises at Shannon's school in May, 1976. There is no showing that appellants made any concerted attempt to communicate with the child by mail or telephone after Shannon's removal from their home in June, 1975.

The trial court relied heavily upon Gary's testimony that he did not believe it in the best interests of the child to see her grandparents. The trial court regarded that showing as presumptively authorizing the

injunction.[1] Appellants challenge the order as unsupported by the evidence.

While there is no Arizona case law dispositive of the issue, cases in other jurisdictions reveal a reluctance on the part of the courts to resort to injunctive remedies which would interfere with personal and domestic relationships. The reasons include difficulties in enforcement and an underlying antipathy to the intrusion of the court into peculiarly personal matters in the absence of a compelling showing of an immediate threat of harm. *E. g., Alberti v. Cruise*, 383 F.2d 268 (4th Cir. 1967); *Devine v. Devine*, 20 N.J.Super. 522, 90 A.2d 126 (1952); *Snedaker v. King*, 111 Ohio St. 225, 145 N.E. 15 (1924).

We are aware of no cases in which an appellate court has sanctioned an injunction against grandparents communicating with their grandchildren. Nor are we aware of any case in which the desires of the parent have been viewed as presumptively authorizing such an injunction.

In cases involving visitation rights, courts have given great weight to the desires of the parents. *See e. g., Rodriquez v. Rodriquez*, 295 So.2d 328 (Fla.App.1974); *Odell v. Lutz*, 78 Cal.App.2d 104, 177 P.2d 628 (1947); 59 Am.Jur.2d, Parent and Child, § 45. Courts hesitate to compel parents to accept visitation by grandparents against the will of the parents, although they have occasionally done so. *See e. g., Boyles v. Boyles*, 14 Ill.App.3d 602, 302 N.E.2d 199 (1973); *Warman v. Warman*, 496 S.W.2d 286 (Mo.App.1973); *Looper v. McManus*, 581 P.2d 487 (Okl.App.1978).

A sharp distinction must be drawn between such cases dealing with the right of grandparents to enforceable visitation privileges, and the instant case involving the propriety of a permanent injunction against otherwise natural and legal attempts to communicate with a grandchild. The distinction is illustrated by a recent Texas case very similar to the case at bar. *Deweese v. Crawford*, 520 S.W.2d 522 (Tex.Civ.App. 1975). There the court upheld the trial court's denial of visitation rights to grandparents but refused to enjoin the grandparents from any contact with the grandchildren. The court stated:

> We have held that . . . appellees' rights as 'paternal grandparents' have been terminated *in law*. As a practical matter, however, these children are and will remain the appellees' beloved grandchildren. We do not mean to suggest that they could not conduct themselves in the future in such a manner as to justify an injunction against them. The point is that they have not done so. While parents are entitled to exercise parental control of the whereabouts, custody and upbringing of their children, they are not thereby entitled to infringe upon appellees' rights. The appellees have attended public meetings and traveled public streets in the hope of seeing their grandchildren. This conduct is neither improper nor illegal. Upon the basis of the evidence presented, there is insufficient grounds for injunctive relief against the Crawfords. 520 S.W.2d at 527.

We find this reasoning persuasive. We hold that in the absence of compelling circumstances showing improper activities by

---

1. The trial court's order provided in pertinent part as follows:

&ast; &ast; &ast; &ast; &ast; &ast;

(3) There is no evidence in the record that it would be in the best interest of Shannon Koehler that her grandparents have visitation with her.

(4) In the absence of showing of 'best interest' the Court must presume that any attempts on the part of the grandparents to visit the child against the wishes of custodial parent would be an interference with the right of custody.

(5) The grandparents have in fact attempted to visit Shannon Koehler against her father's wishes.

(6) It is in the best interest of Shannon Koehler that her grandparents do not have visitation with her.

&ast; &ast; &ast; &ast; &ast; &ast;

IT IS FURTHER ORDERED that Melvin Koehler and Thelma Koehler are permanently restrained from attempting to contact or communicate with Shannon Koehler, and from going upon the premises where said minor resides and is attending school.

grandparents threatening the welfare of the child, injunctions against grandparental communications should not issue. In the instant case, there are no such circumstances. The injunction was erroneously entered by the trial court and is therefore set aside. Nothing in this opinion, however, should preclude the trial court's consideration of any subsequent applications by the parties with respect to visitation or communication with the child, and any such applications should be determined on the basis of circumstances existing at the time of the hearing.

Reversed.

OGG, C. J., and JACOBSON, J., concur.