135 N.J. Super. 328 (1975)
343 A.2d 166
ELLEN HAFNER, PLAINTIFF,
v.
OTTO HAFNER AND JANE HAFNER, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
July 3, 1975.
*330 Mr. John A. Yacovelle, Jr., for plaintiff.
Mr. Jeffrey I. Kessler for defendants (Messrs. Melnik, Morgan, Weinberg and Weiner, attorneys).
KING, J.C.C., Temporarily Assigned.
Defendants move for summary judgment on the ground that this action is barred by New Jersey's Heart Balm Act, N.J.S.A. 2A: 23-1, which abolishes a right of action for alienation of affections, criminal conversation, seduction and breach of contract *331 to marry. The court must determine whether all of the allegations in the complaint, taken together, actually state the proscribed cause of action for alienation of affections, or whether any other causes of action for which plaintiff might recover are pleaded. It is now elementary that all pleadings shall be liberally construed, R. 4:5-7, and the essence of an actionable claim will be pieced out and sustained where the pleading is unclear. Wheeler v. Wheeler, 48 N.J. Super. 184, 197 (App. Div. 1957).
The complaint, drawn in one count, alleges that plaintiff was married to Fred Hafner, now deceased, on December 30, 1966. Defendant Otto Hafner is Fred Hafner's son by a previous marriage, and defendant Jane Hafner is Otto Hafner's wife. While plaintiff was on a trip to California in June of 1971, her husband suffered a stroke and was removed to his son's residence. Plaintiff returned to New Jersey on June 27, 1971 and discovered her husband's whereabouts after some investigation, but was refused permission to visit him by defendants. Plaintiff alleges that her husband was being detained by defendants against his will and would have returned to his marital home if permitted to do so. A court order, rendered on October 1, 1972, permitted plaintiff to visit her husband at defendants' residence and enjoined defendants from interfering in any way with the visits. Plaintiff alleges that during visitations pursuant to that order she was subjected to harassment and ridicule by defendants, and was interfered with in her attempted conversations with her husband. Ultimately, on February 23, 1972 defendants were ordered by the court to deliver Fred Hafner to the custody of plaintiff, which they did on February 24, 1972. Fred Hafner died on February 25, 1972.
Also set forth in the complaint is the allegation that plaintiff was deprived of support and maintenance for an eight-month period as a result of defendant Otto Hafner's intentional and wrongful acts. Defendant allegedly obtained a power of attorney in a fraudulent manner over the property *332 and funds of his father Fred Hafner on August 4, 1971. Until February 24, 1972 plaintiff received only two checks in the sum of $50 each from defendant, while her monthly expenses during that period amounted to approximately $750 a month. As damages plaintiff seeks compensation for "loss of consortium" and "severe emotional distress," as well as punitive damages for the intentional tort, counsel fees and costs, and "whatever other relief may be adjudged proper."
The cause of action for alienation of affections consists of wrongful conduct by a defendant which interferes with the marital relationship between spouses to the extent of causing a loss of consortium. Grobart v. Grobart, 5 N.J. 161 (1950); 42 C.J.S. Husband and Wife § 664 at 319; 41 Am. Jur.2d, Husband and Wife, § 466 at 393; see also, Prosser on Torts (3 Ed. 1964), § 118 at 895; Restatement, Torts, § 683 et seq. (1938). The gravamen of the action is the loss of consortium, that is, the loss of marital affections, comfort, society, assistance and services of a spouse who has been wrongfully enticed away. Grobart v. Grobart, supra; Devine v. Devine, 20 N.J. Super. 522 (Ch. Div. 1952).
Plaintiff admits that paragraphs 17 and 18 of the complaint[1] arguably fall within the right of action abolished by N.J.S.A. 2A:23-1, but urges that the gist of the action, taken as a whole, is for the tort of intentional infliction of emotional distress. This tort has not yet gained express recognition in New Jersey. A distinction must be drawn between recovery for emotional distress as an element of damages that may be recovered for an underlying tort, and the intentional infliction of emotional distress as a tort itself. Recovery has been routinely allowed for mental anguish or *333 emotional distress where some independent tort could be made out which would serve as a "peg upon which to hang the mental damages." Prosser, op. cit., § 11 at 44; Harris v. D.L. & W.R.R. Co., 82 N.J.L. 456 (1912) (Conductor liable in trespass de bonis asportatis for the indignities caused by the wrongful conversion of a railroad ticket); Spiegel v. Evergreen Cemetery Co., 117 N.J.L. 90 (1936) (recovery for ensuing mental distress supported by the tort of malicious interference with plaintiff's right to bury the dead and inter the remains); Kuzma v. Millinery Workers Union Local 24, 27 N.J. Super. 579 (App. Div. 1953) (recovery for mental anguish and emotional distress supported by the tort of malicious interference with employment); Morris v. MacNab, 25 N.J. 271 (1957) (defendant's action in fraudulently inducing plaintiff to enter into a marriage which he knew would be bigamous supported recovery for plaintiff's "sham, humiliation and mental anguish"). See also, Gray v. Serruto Builders, 110 N.J. Super. 297 (App. Div. 1970). The courts traditionally strive to discover some familiar and precedential basis of liability. In Spiegel, for instance, the right to bury the dead and inter the remains is characterized as a "quasi-right of property." 117 N.J.L. at 93. Prosser, in discussing the newly developing tort of the intentional infliction of mental distress, comments on Spiegel and similar cases dealing with the mishandling of dead bodies as follows:
In most of these cases the courts have talked of a somewhat dubious "property right" to the body, usually in the next of kin, which did not exist while the decedent was living, cannot be conveyed, can be used only for the one purpose of burial, and not only has no pecuniary value but is a source of liability for funeral expenses. It seems reasonably obvious that such "property" is something evolved out of thin air to meet the occasion, and that it is in reality the personal feelings of the survivors which are being protected, under a fiction likely to deceive no one but a lawyer.
Where the tort has been recognized it is generally agreed that the wrongful conduct must be so extreme and outrageous "as to go beyond all possible bounds of decency, and *334 to be regarded as atrocious and utterly intolerable in a civilized community." Restatement, Torts 2d, § 46, Comment (d) at 73. See, e.g., Papieves v. Lawrence, 437 Pa. 373, 263 A. 2d 118 (Sup. Ct. 1970); Cornblith v. First Maintenance Supply Co., 268 Cal. App.2d 564, 74 Cal. Rptr. 216 (D. Ct. App. 1968); Korbin v. Berlin, 177 So.2d 551 (Fla. D. Ct. App. 1965); Pretsky v. Southwestern Bell Tel. Co., 396 S.W.2d 566 (Mo. Sup. Ct. 1965). The court finds as a matter of law that the conduct alleged does not amount to the type of outrage necessary to establish a cause of action. This case cannot serve as the vehicle to recognize expressly the tort of intentional infliction of emotional distress for the first time in New Jersey. Rather, the court finds that the gist of the action is for alienation of affections. Recovery is barred by the Heart Balm Act, and summary judgment is granted to defendants to the extent that the pleadings seek recovery under that theory.
The inquiry does not end here, however. Plaintiff alleges that defendant fraudulently obtained control over his father's finances and wrongfully deprived her of support for an eight-month period. The novel question presented is whether the Heart Balm Act bars recovery for wrongful interference with a wife's common law and statutory right to receive support from her husband.[2] Some guidance may be found on this point in the Grobart decision, supra. Plaintiff there sued her brothers and sisters-in-law for maliciously conspiring to injure plaintiff in her marital relations with her husband. Plaintiff claimed they fraudulently and deceitfully reprived her of certain rights in her husband's real and personal property, prevented her from pursuing a suit for maintenance against her husband, forced her to compromise certain claims she had as her husband's spouse for less than their true value, and engaged in other actions which suggested elements *335 of malicious prosecution, libel and slander. The Supreme Court concluded that the complaint, although imperfectly drafted, asserted causes of action which were outside the purview of the Heart Balm Act. The court construed the statute as follows:
The intention of the lawmakers was to prevent extortion and blackmail that often accompanied the institution of the actions specifically outlawed by the statute, but it was not intended to reach further and prohibit all actions involving property and personal rights not subject to those abuses in which actions married people are concerned. [5 N.J. at 167]
In essence, the court held that where recovery is not sought for loss of the conjugal society and services of a spouse, the action is not barred. Similarly, in Morris v. MacNab, 25 N.J. 271 (1952), the Supreme Court, citing Feinsinger, "Legislative Attack on Heart Balm," 33 Mich. L. Rev. 979, 1000 (1935), iterated its position with respect to the Heart Balm Act as follows:
* * * courts cannot escape the burden of construing legislation as sweeping as this, so as to eliminate the evils aimed at without destroying rights not considered by the legislative, whose continued existence may be important to society and to individuals. [at 276]
See also, Stickles v. Manss, 36 N.J. Super. 95 (1955) (valid claim of libel not barred where allegations might support action for alienation of affections); Devine v. Devine, supra (injunctive relief to restrain third person from alienating the affections of a spouse not barred by statute).
Of crucial significance here is the allegation that defendant, as agent and attorney in fact for plaintiff's husband, directly and personally interfered with the payment of support to plaintiff. It is well established that where an agent has full and exclusive control over the property involved, he is liable to third persons for his tortious acts, even where he received no benefit from his wrong. 3 C.J.S. Agency § 379 at 201-202. In the Devine case, supra, plaintiff brought suit against her mother-in-law alleging, in part, that *336 her husband's desertion, abandonment and refusal to support were caused by the false and malicious statements and representations made by defendant to her son for the purpose of interfering with and destroying plaintiff's marriage. The court held that the action was grounded upon alienation of affections and damages were barred by the Heart Balm Act. Recovery for interference with the husband's duty to support was denied. This proposition is not applicable to the case here under consideration, since defendant in Devine merely influenced the spouse, whereas in the instant case it is alleged that defendants directly and personally interfered with support payments. It is claimed here that defendants actually controlled the husband's assets and property, preventing plaintiff's rightful access to them over a period of eight months. If plaintiff's allegations are provable at trial, they support an economic tort, beyond the scope of the proscription and policy of the Heart Balm Act.
Authority from other jurisdictions on the question of whether allegations of wrongful interference with right to support make out a cause of action separate from alienation of affections is sparse. In Lavigne v. Lavigne, 80 N.H. 559, 119 A. 869 (Sup. Ct. 1923), it was held that "the gist of the action [for alienation of affections] is not the deprivation of support, but the loss of consortium of the husband, which includes his affection, conjugal society, aid and cooperation." 119 A. at 871. See contra, Sebastion v. Kluttz, 6 N.C. App. 201, 170 S.E.2d 104 (Ct. App. 1969); Nelson v. Nelson, 296 F. 369 (2 Cir.1924); Restatement, Torts, § 690, Comment (b) at 487 (1938); 42 C.J.S. Husband and Wife § 665 at 319.
The court finds that plaintiff's allegation relating to defendant's wrongful deprivation of support payments constitutes a cause of action which is independent of the causes of action barred by N.J.S.A. 2A:23-1. Analogy may be made to the line of cases allowing recovery for the torts of malicious and unjustifiable interference with contractual rights or business relations, Middlesex Concrete Products, *337 etc., v. Carteret Indus. Ass'n, 37 N.J. 507 (1962), and the tort of wrongful interference with prospective economic advantage. Harris v. Perl, 41 N.J. 455 (1964). See also, Louis Kamm, Inc. v. Flink, 113 N.J.L. 582 (E. & A. 1934), for the general proposition that the law protects parties to contractual and other relations against unjustifiable interference.
Defendants argue alternatively with regard to support that the issue was previously litigated and rejected by the court on February 23, 1971, when defendants were ordered to deliver Fred Hafner to plaintiff's custody. However, neither plaintiff's moving papers seeking the return of her husband nor the opinion of Judge Lowengrub indicate that the precise cause of action alleged here  defendant's tortious interference with plaintiff's legal right to obtain support  was in fact previously litigated. Judge Lowengrub merely ordered the payment of $100 a week for plaintiff's prospective maintenance and support. Accordingly, defendants' motion for summary judgment on plaintiff's allegation relating to support payments is denied.
NOTES
[1] 17. Defendants Otto Hafner and Jane Hafner had enticed, influenced, or advised Fred Hafner to live with them, causing plaintiff the loss of her husband's services, society and conjugal affection, for which plaintiff is entitled to damages.

18. The acts of defendants, Otto Hafner and Jane Hafner, aforementioned were a substantial factor in causing plaintiff to lose the services, society, and conjugal affection of Fred Hafner.
[2] A husband's duty to support his wife is well established. Capodanno v. Capodanno, 58 N.J. 113, 118 (1971); N.J.S.A. 2A:34-23; 2A:34-24.