178 N.J. Super. 310 (1981)
428 A.2d 966
LARRY HUME, MARVIN HUME AND GERALDINE HUME, PLAINTIFFS,
v.
JOEL S. BAYER, JOHN DOE AND ATLANTIC CITY MEDICAL CENTER, DEFENDANTS.
Superior Court of New Jersey, Law Division Atlantic County.
Decided January 22, 1981.
*312 Jeffrey M. Keiser, for plaintiffs (Ballen, Keiser & Denker, attorneys).
Donald Grasso, for defendant Bayer (Orlovsky, Grasso & Orlovsky, attorneys).
Joel Greenberg, for defendant Hospital (Horn, Kaplan, Goldberg & Gorny, attorneys).
GIBSON, J.S.C.
The within action seeks recognition of a cause of action based on "outrage", or as otherwise labeled, the intentional infliction of emotional distress. The claim arises out of a doctor-patient relationship where plaintiffs include the patient as well as his parents. Defendants include the doctor and the hospital where the alleged wrongful conduct occurred. Although the action initially sought damages based on both malpractice and the intentional infliction of emotional distress, the malpractice claim has since been abandoned. Counsel for the doctor now moves for summary judgment.
For purposes of this motion the court is required to view the facts in a light most favorable to the party resisting the application R. 4:46-2. This standard requires not only that all factual disputes be resolved in plaintiff's favor but every reasonable *313 inference as well. Viewed in that light, the material facts here indicate the following: while under the care of Dr. Joel Bayer, plaintiff Larry Hume underwent an operation precipitated by abdominal pain. Although the surgery involved nothing more than the removal of a mildly infected appendix, Dr. Bayer reported to Larry's parents that the appendix had not been removed and instead he was required to excise an 8-10 inch section of inflamed and possibly cancerous tissue. Taken in their totality, the facts, if believed, permit the further inference that this statement was untrue and that Dr. Bayer made it knowing it was untrue and knowing the high degree of probability that it would inflict emotional distress upon the Humes. Dr. Bayer further indicated that the disease from which Larry was suffering was Mesenteric Venous Thrombosis, an ailment extremely rare in someone so young. Larry was 18 at the time. In order to determine whether the tissue was malignant Dr. Bayer explained that a test would be run two days later. No test was ever done on such tissue, although Dr. Bayer later reported that the results were negative.
Larry experienced a great deal of pain following the operation and vomited repeatedly over a two-day period. The hospital staff refused to administer any pain relievers to him and ignored plaintiff's pleas for an explanation as to what was really happening to their son. Conflicting stories were told to the Humes regarding the type of operation involved during which time Larry's condition worsened and he lost 25 pounds. For several days his parents suffered severe emotional distress believing their son was possibly going to die and being unable to obtain reliable information concerning his condition. In desperation, they finally made arrangements to have Larry removed to the hospital of the University of Pennsylvania. Prior to Larry's transfer plaintiffs instructed the hospital staff to discontinue any further treatment. Their instructions were disregarded. While at the University of Pennsylvania, Larry underwent a procedure to remove a bowel obstruction secondary to an appendectomy. He recovered in the normal course.
*314 The above facts, although sharply disputed by defendants, are deemed admitted for the purpose of this motion. It is defendant's position that even if plaintiffs' version of the facts were to be believed, a cause of action for the intentional infliction of emotional distress does not lie and has not been recognized in this State. The legal question thus presented is whether these facts, if proved, constitute such a cause of action assuming its viability.
There is no question that New Jersey recognizes emotional distress as an element of damages in actions based on either negligence or an intentional tort. Portee v. Jaffee, 84 N.J. 88 (1980); Berman v. Allen, 80 N.J. 421 (1979); Falzone v. Busch, 45 N.J. 559 (1965); Muniz v. United Hospitals Medical Center Presbyterian Hospital, 153 N.J. Super. 79 (App.Div. 1977); Kuzma v. Millinery Workers, etc. Local 24, 27 N.J. Super. 579 (App.Div. 1953). On the other hand, in all of the cases cited above there was a violation of an underlying duty to which the claim for emotional distress could attach. No appellate court has yet to recognize the intentional infliction of emotional distress as an independent cause of action.
The significance of this distinction was examined in Hafner v. Hafner, 135 N.J. Super. 328 (Law Div. 1965). Although the court there ruled that the action before it was essentially one involving alienation of affection and thus barred by Heart Balm Act, it also discussed the plaintiff's claim for emotional distress as a separate tort. The court noted that the tort had not yet gained express recognition in New Jersey and ruled that the claim before it did not justify such recognition. Judge King then made the following observation: "A distinction must be drawn between recovery for emotional distress as an element of damages that may be recovered for an underlying tort, and the intentional infliction of emotional distress as a tort itself." Id. at 332-333. In those states where the tort has been recognized it is "generally agreed that the conduct must be so extreme and outrageous `as to go beyond all possible bounds of decency, and *315 be regarded as atrocious and utterly intolerable in a civilized community.' Restatement, Torts 2d § 46, Comment (d) at 73." (citations omitted). Hafner v. Hafner, supra at 333-334.
Further guidance into the precise outlines of the cause of action now being examined may be found in the Restatement of Torts as cited by Judge King in Hafner, supra.
§ 46. Outrageous Conduct Causing Severe Emotional Distress
(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress.
(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
(b) to any other person who is present at the time, if such distress results in bodily harm.
Additional support for the recognition of a cause of action for "outrage" is found in Dean Prosser's classic treatise on torts. Prosser, Law of Torts (4th ed. 1971), § 12. Prosser cites a variety of cases from a number of jurisdictions which not only recognize the tort but also provide illuminating examples of the type of conduct considered sufficiently extreme and outrageous to justify recovery. Examples include spreading a false rumor that plaintiff's son had hung himself; bringing a mob to plaintiff's door with a threat to lynch him if he did not leave town; and wrapping up a gory dead rat inside of a loaf of bread for a sensitive person to open. Id. at 56. It is difficult to generalize as to what type of conduct is actionable based on the cases cited but as Prosser points out, the courts have upheld liability where the conduct exceeded all bounds usually tolerated by decent society and where the actions are especially calculated to cause and do cause mental distress of a very serious kind. Ibid.
Given the outrageous nature of the conduct described, one may question why there should not be recognition of a cause of action for the injury which it produces. A recent Law Division case provides some insight into the reasons which in past years have produced a reluctance to recognize claims for emotional *316 distress. Lemaldi v. De Tomaso of America, Inc., 156 N.J. Super. 441 (1978). Although that case did not deal with the tort now being examined, a claim for emotional distress was involved. The jury made an award to the purchaser of an automobile for mental anguish suffered by him as a result of the manufacturers' failure to correct continuing malfunctions in plaintiff's car. The court refused to vacate the award but nevertheless commented on the caution with which claims for emotional distress have been examined.
With good reason, courts have been loath to recognize mental anguish claims. Subjective as they are, they offer a potential for abuse which dictates caution and the infrequency of circumstances deemed to justify judicial recognition of such claims. In order for mental anguish to be recognized, there should be a reasonable guarantee against fraudulent or frivolous claims; the victim's response must not be idiosyncratic but reasonably to be anticipated in a normal person, and the claimed injury must be deemed sufficiently important to warrant elevation to a litigable right. The relationship of the parties must also be considered. Caputzal v. The Lindsay Co., 48 N.J. 69 (1966); Goldberg v. Housing Authority, 38 N.J. 578 (1962). Id. at 448-449.
Some of these same concerns were reflected in the decision by the Supreme Court in Falzone v. Busch, supra. There, for the first time, the court recognized the right to recover for injury resulting from fear for one's safety caused by another's negligence, despite the absence of physical impact. In doing so, the court rejected the suggestion that either difficulties in proof concerning causal connection or fears of actions based on fictitious injuries should preclude such recognition. Similarly rejected was the proposition that allowing such a basis for recovery would cause a `flood of litigation'. As noted, "the fear of an expansion of litigation should not deter courts from granting relief in meritorious cases...." Id. at 567. Evidencing continuing caution, however, the court ruled that recovery could be permitted only where fright caused substantial bodily injury or sickness. Anything less was "regarded as too lacking in seriousness and too speculative to warrant the imposition of liability." Id. at 569.
Despite the caution expressed historically there can no longer be any question that claims based on emotional distress *317 are now given full recognition. Falzone v. Busch, supra; Portee v. Jaffee, supra. The significant question here is whether the existence of an underlying tort is critical to that claim or whether the intentional infliction of emotional distress should be recognized as an independent cause of action. Cf. Hafner v. Hafner, supra. This question may be more a matter of semantics than substance. Generally a tort is a civil wrong involving a breach of a duty. If one intentionally injures another, whether by word or by actions, the injured party should be entitled to redress. It should not matter whether the injury produced is secondary to some separate breach or the very injury intended. It is the view of this court therefore that the existence or non-existence of an underlying independent cause of action is not essential to a cause of action for outrage. Nor should fears of fictitious claims or difficulties in proof preclude recognition of this claim. Such fears have been disposed of by the cases which recognized emotional distress as an element of damages. Falzone v. Busch, supra. Accordingly, there no longer appears to be any valid reason for withholding the recognition of a cause of action for the intentional infliction of emotional distress based on extreme and outrageous conduct. Restatement, Torts, 2d, supra.
A remaining question with regard to the cause of action generally is whether the emotional distress should be of such a degree that it causes "substantial bodily injury." Falzone v. Busch, supra, at 569. The Restatement, contains no such requirement but rather speaks in terms of "severe emotional distress". Bodily harm is required only where the conduct is directed at third persons. Restatement, supra. Nevertheless, this element was referred to in two of the key cases dealing with emotional distress as an element of damages and could arguably be made a condition here as a means of weeding out frivolous claims or ones that might otherwise be considered speculative. Cf. Falzone v. Busch, supra at 569; Portee v. Jaffee, supra at 93. In examining this issue it is helpful to recall that Falzone was decided in 1967 and to compare the later *318 treatment by the Supreme Court. In Berman v. Allen, supra, for example, the court commented on the changing attitude toward emotional distress during the period since Falzone. As noted in Berman the "courts have come to recognize that mental and emotional distress is just as `real' as physical pain, and that its valuation is no more difficult." Id., 80 N.J. at 433. In Berman there was no indication whether the emotional distress produced substantial bodily injury.
The "substantial bodily injury" language was nevertheless referred to in the most recent treatment by the court in Portee v. Jaffee, supra, 84 N.J. at 93. The emotional injury sustained in that case was indeed severe and included an attempted suicide. It is clear from the opinion, however, that the legitimacy of the claim was not gauged by the severity of the physical manifestations of distress. The court spoke in terms of "foreseeability" concerning the effect on persons "normally constituted". Id. at 95. Plaintiff was a mother who had witnessed her son's death and the court emphasized the special relationship between a parent and child as bearing on the nature of the interest being protected and the legitimacy of the claim itself. When the court outlined the elements of proof required for the negligent infliction of emotional distress it included a requirement that the distress be "severe" but there was no mention of a requirement that plaintiff suffer bodily injury. Id. at 101. Although it is important to remember that the court there was dealing with negligent as opposed to intentional infliction of emotional distress, the ruling underscores a recognition of the infinite variety of negligent conduct that may causally result in emotional distress. It was the determination of the court to recognize only a restricted class of such cases and even then, only where the distress is severe. Parenthetically, it should be noted that the court's recognition of the negligent infliction of emotional distress provides strong support for the recognition of the same claim when the infliction is intentional.
*319 For present purposes it is significant that the intentional nature of the actor's conduct gives the injured party's claim an added element of reliability. Extreme and outrageous conduct by its nature produces distress in "normally constituted" persons against whom it is directed. This factor, along with the most recent expression by the Supreme Court in Portee, justifies the conclusion by this court that "substantial bodily injury" should not be required to sustain the within claim. As noted in the Restatement, it is sufficient that the conduct produce emotional distress which is "severe". Restatement, supra; Portee v. Jaffee, supra.
Given the above conclusions attention must now be directed to the claims involved in the case before this court. Is the conduct described here sufficiently outrageous to defeat the present motion? Whether or not particular actions may be fairly labeled "outrageous" will not always be clear. Nevertheless, accepting plaintiffs' version of the facts, this court is satisfied that the conduct of the movant would fall into such a category. When a doctor tells the parents of his patient that their child is suffering from a rare disease which may be cancerous knowing that the child has nothing more than a mildly infected appendix, such action is not entitled to judicial protection. Defendant's actions certainly evidence either an intention to inflict emotional distress or a reckless disregard of the fact that such distress was probable. The fact that no appellate court has yet to expressly recognize this cause of action is insufficient reason to deny plaintiff's relief. Falzone v. Busch, supra, 45 N.J. at 567. In ruling on the motion it is also important to note that although there was no suggestion of plaintiffs having suffered bodily injury, their moving papers do support a conclusion that the emotional distress which they suffered was severe.
The motion for summary judgment insofar as it is directed against the parents of Larry Hume will accordingly be denied. As to Larry himself, the situation is different. The moving *320 papers contain no facts to support the conclusion that the doctor intentionally communicated misinformation to him or even that Larry was aware of the doctor's statements. Nor is there any indication that Larry suffered severe emotional distress. Defendant's motion as to Larry Hume will be granted.