**Deborah A. BUTLER, Plaintiff,**

v.

**SHERMAN, SILVERSTEIN & KOHL, P.C., Defendants.**

**Civ. A. No. 89–2290(JFG).**

United States District Court, D. New Jersey.

Nov. 14, 1990.

Robert T. Vance, Jr., Brown, Vance, Jackson & Smith, Philadelphia, Pa. and Nicholas Panarella, Jr., Cherry Hill, N.J., for plaintiff.

Steven G. Wolschina, Brown and Connery, Westmont, N.J., for defendants.

## OPINION

GERRY, Chief Judge.

### INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff, Deborah A. Butler, was hired by defendant law firm, Sherman, Silverstein & Kohl, P.C., and employed from September 3, 1987 to October 12, 1987, at which time she was terminated. Plaintiff is an African–American who contends that her termination was racially motivated. In May, 1989, she brought this suit alleging a federal claim under 42 U.S.C. § 1981 in the first count and the following state law claims:[1] violation of public policy of the Commonwealth of Pennsylvania and State of New Jersey; violation of New Jersey Law Against Discrimination ["NJLAD"]; intentional infliction of emotional distress; and oppressive and malicious termination.[2]

Defendant brought a motion for summary judgment or dismissal of the federal claim alleged in the first count, and for the remaining state claims for lack of jurisdiction and for failure to state a claim. For the reasons that follow, this court grants defendant's motion in part and denies defendant's motion in part.

### DISCUSSION

#### A. Standard for Granting Summary Judgment

A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir.1986); Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact, the court must view all doubt in favor of the non-moving party. Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983), cert. dismissed, 465 U.S. 1091,

104 S.Ct. 2144, 79 L.Ed.2d 910 (1984) citing Smith v. Pittsburgh Gage and Supply Co., 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ The Third Circuit has interpreted recent Supreme Court decisions to mandate that "a motion for summary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." J.E. Mamiye & Sons, Inc. v. Fidelity Bank, 813 F.2d 610, 618 (3d Cir.1987) citing Anderson, 477 U.S. 242, 106 S.Ct. 2505, and Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In short, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. This requires the non-moving party to do more "than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). Indeed, if the evidence is merely "colorable" or is "not significantly probative," summary judgment may be granted. Anderson, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted); see also, Equimark Comm. Finance Co. v. CIT Financial Serv. Corp., 812 F.2d 141 (3d Cir.1987). In sum, when the record taken as a whole could not lead a rational trier of facts to find for the non-moving party, there is no "genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356.

---

1. This court's jurisdiction is based on federal question (42 U.S.C. § 1981) and diversity of citizenship (28 U.S.C. § 1332).

2. Plaintiff voluntarily dismissed two other counts for violation of Pennsylvania Human Relations Act ["PHRA"] and tortious interference with a prospective contractual relationship.

Against this background, we turn to plaintiff's claims.

## B. *Disposition of Plaintiff's Claims*

### 1. Plaintiff's § 1981 Claim

Plaintiff alleges that defendant's offer of employment was made on discriminatory terms and, therefore, denied her of her rights. More specifically, plaintiff alleges that defendant believed her to be "non-black," and that its hiring decision was based on this assumption. Upon discovering that plaintiff was black, plaintiff argues that defendant wrongfully terminated her. We disagree with plaintiff's contention. This court finds that there is no genuine issue for trial on this claim; therefore, we grant summary judgment.

Plaintiff bases her first claim on section 1981, which provides "all persons ... [with] the same right in every state ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...." 42 U.S.C. § 1981. As this court stated in its previous letter opinion,

> During a section 1981 inquiry, the focus must be on the moment when the prospective employee was either offered employment or rejected for the job, and on whether any discriminatory intent or action was present at that time.

Letter opinion, page 3, *quoting Patterson v. McLean Credit Union*, 109 S.Ct. 2363, 2376–77, 105 L.Ed.2d 132 (1989). We find that plaintiff has not presented sufficient evidence for this court to find that a material factual dispute exists as to whether defendant believed her to be non-black or acted upon that belief at the time of hiring. ■ It is undisputed that defendant offered plaintiff employment and she accepted that employment. Therefore, the salient inquiry is: Whether defendant be-

lieved plaintiff was non-black at the time it offered her employment? The answer is, "no." Messrs. Yellin and Sherman, shareholders of defendant, Sherman, Silverstein and Kohl, P.C., had the primary responsibility of interviewing and hiring plaintiff. It is their sworn testimony[3] that they believed plaintiff was black when they interviewed her, considered her for a position, and offered her employment. Sherman affidavit at ¶¶ 1; Yellin affidavit at ¶ 1. In fact, plaintiff's color and race was a discussion among the shareholders during the time period she was being considered for employment. Sherman affidavit at ¶ 4; Yellin affidavit at ¶ 3; Silverstein affidavit at ¶ 1; Karcich affidavit at ¶ 1; and Mrs. Phyllis Sherman deposition at 8–9.

In response, plaintiff offers only speculation and conjecture. She states that she did not get the "feeling" that the defendant thought she was black, Butler Deposition, p. 18, l. 24; that it is her experience that when she is mistaken for being white, she is treated better, *id.* at p. 12, l. 3–11; that Robert Washburn's inquiry as to whether she was black indicates that defendants Sherman and Yellin (who interviewed her) did not know she was black either, *id.* at p. 19, l. 15–18; that Mr. Yellin's expression of surprise upon discovering that plaintiff brought her black boyfriend to work on a Saturday indicates that he did not know that she was black, *id.* at 67, l. 21; and that Mrs. Phyllis Sherman's expression of surprise at plaintiff's affiliation with, and the low number of, black students at Boston University Law School was due to plaintiff's race, *id.* at p. 70–72. Plaintiff submits no facts to support her contentions. In fact, plaintiff presents no facts or other circumstances to indicate racial prejudice at the firm aside from her contention that the firm had a discriminatory pattern of hiring since there were no black attorneys prior to her hiring.

---

**3.** Fed.R.Civ.P. 56(e) requires that an affidavit be made on personal knowledge, that it set forth facts admissible in evidence, and that it affirmatively show that the affiant is competent to testify to the matters stated therein. The affidavits presently before the court satisfy these re-

quirements. Further, the testimony in the affidavits discusses the defendant's belief as to plaintiff's race—a fact explicitly put in issue by plaintiff's Amended Complaint. Therefore, this court finds that it can properly consider defendant's submissions.

Plaintiff is unable to meet her burden of setting forth specific facts showing that there is a genuine issue for trial. Further, even though the court accepts plaintiff's contention that the credibility of defendant's witnesses is crucial in deciding this issue, this ground alone is insufficient as a basis to deny summary judgment. *See Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512, 104 S.Ct. 1949, 1965, 80 L.Ed.2d 502 (1984). Plaintiff still has the burden of producing evidence that will support a jury verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 257, 106 S.Ct. at 2514. Plaintiff, however, has not met this burden.

### 2. *Plaintiff's Claim that Defendants Violated Public Policy*

#### a. *Pennsylvania*

■ Plaintiff's common law claim for alleging violation of Pennsylvania public policy must be dismissed for failure to state a claim.[4] Courts have not recognized a common law tort cause of action where a remedy exists under the Pennsylvania Human Relations Act ("PHRA"). *See, e.g., Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 912 (3d Cir.1982); *DeRamo v. Consolidated Rail Corp.*, 607 F.Supp. 100 (E.D.Pa.1985).

Since the PHRA provides a remedy for racial discrimination, plaintiff's claims are barred.

#### b. *New Jersey*

■ We next turn to whether plaintiff's common law claim for alleging violation of New Jersey public policy must be dismissed for failure to state a claim. Specifically, we ask whether the NJLAD preempts a common law claim of wrongful discharge on racial discrimination grounds. We find that it does; therefore, we dismiss this claim.

---

4. Plaintiff concedes that there is no common law cause of action for wrongful discharge/refusal to hire based upon race discrimination. Plaintiff's Supplementary Memorandum of Law in Opposition to Defendant's Motion to Dismiss Counts II and VI, at 3-4.

Although the New Jersey Supreme Court has not definitively answered this question, the Court has addressed the issue. "In the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how that court would rule." *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981). We predict that New Jersey would not allow a common law cause of action for wrongful discharge based on race discrimination. We base our prediction on several factors.

First, we examine the policies underlying New Jersey's wrongful discharge doctrine and its application in other cases. In *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505 (1980), the New Jersey Supreme Court carved out a public policy exception to the employment at will doctrine. The court held that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." *Id.* at 72, 417 A.2d 505. The pronouncement was made in the context of an alleged retaliatory firing. In a subsequent case, *Lally v. Copygraphics*, 85 N.J. 668, 428 A.2d 1317 (1981), the New Jersey Supreme Court allowed a civil cause of action for wrongful discharge based on a retaliatory firing after plaintiff filed a worker's compensation claim. A New Jersey statute declared such firing to be illegal and provided both penal sanctions and administrative relief. *Id.* at 670, 428 A.2d 1317.

Unlike the cases mentioned above, our case does not involve a retaliatory discharge. Further, plaintiff here, unlike plaintiffs in *Pierce* and *Lally*, has avenues for relief under comprehensive and parallel state and federal statutes. In particular, by enacting the NJLAD, the Legislature of the State of New Jersey has already provided a remedy for plaintiff.[5] And, most

---

5. In fact, the New Jersey Legislature recently amended the NJLAD to provide, "The Legislature intends that such damages [including compensatory and punitive damages available at common law] be available to all persons protected by this act and that this act shall be liberally construed in combination with other protections available under the laws of this

important, a close reading of two recent cases, *Shaner v. Horizon Bancorp.*, 116 N.J. 433, 561 A.2d 1130 (1989) and *Erickson v. Marsh & McLennan Co., Inc.*, 117 N.J. 539, 569 A.2d 793 (1990), indicates that the New Jersey Supreme Court does not intend to provide for a common law remedy to supplement the NJLAD.

In *Shaner*, plaintiff brought an action for wrongful discharge in violation of Federal Age Discrimination in Employment Act, the NJLAD, and violation of public policy. The court dismissed the violation of public policy claim along with the federal statutory claim.[6] In addressing another issue on appeal, the Supreme Court stated,

> Moreover, it should be noted that one of the reasons underlying the decision by this Court to provide a tort or contract action to at-will employees who are wrongfully discharged is that such an employee has no other effective or realistic means through which to vindicate a wrong and secure redress for an employer's wrongful conduct.

*Shaner*, 116 N.J. at 454, 561 A.2d 1130, citing *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. at 71, 417 A.2d 505. The court explained that the common law grows and expands in response to perceived needs to serve the ends of justice. *Id.* The Court noted that this has compelled some courts to refuse as a matter of sound policy to create a common law tort or contract action when an adequate alternative remedy exists. *Id., citing Wolk v. Saks Fifth Avenue, Inc.*, 728 F.2d 221 (3d Cir.1984) (statutory remedy in Pennsylvania Human Relations Act precludes extension of common law to provide cause of action). The *Shaner* court concluded by stating, "**Because the LAD provides a victim of age discrimination with a remedy, it might be unnecessary to recognize or state.**

create a *Pierce*-**type action to vindicate substantially the same rights and provide similar relief.** *Id.* (emphasis added).

In the above passage, the New Jersey Supreme Court acknowledges that a common law remedy does not exist for age discrimination, and that "it might be unnecessary" to recognize such a remedy (because the NJLAD already provides a remedy). In the later case of *Erickson v. Marsh & McLennan Co., Inc.*, 117 N.J. 539, 569 A.2d 793 (1990), the court reaffirmed its statement on this issue. In *Erickson*, the plaintiff, a male, brought a sex discrimination case alleging that he was wrongfully discharged so that his superior could promote a woman with whom the superior was romantically involved. Plaintiff claimed that this discharge was in violation of the NJLAD and also constituted a common law wrongful discharge against public policy.

The **appellate division,** in concluding that NJLAD did **not** preempt the common law cause of action, stated:

> Redress for violations of that public policy are not limited to the administrative and penal remedies of the NJLAD. The act authorizes private complaints in the Superior Court for redress under its provisions, N.J.S.A. 10:5-13; it does not foreclose judicial enforcement of independent rights of redress. N.J.S.A. 10:5-27. Independent rights exist under our common law. *See Peper v. Princeton University Board of Trustees, supra,* 77 N.J. [55] at 79-80 [389 A.2d 465 (1978)]. The NJLAD supplemented existing law in the area of civil rights; it did not supplant it. *Jackson v. Consolidated Rail Corp.*, 223 N.J.Super. 467, 482-483 [538 A.2d 1310] (App.Div.1988). Its supplemental prescription of administrative and penal remedies does not fore-

---

state." N.J.S.A. 10:5-3 (Supplement 1990) (amended April 16, 1990). *See also, infra,* note 8 and accompanying text.

**6.** The plaintiff did not appeal or petition the Supreme Court of New Jersey on these issues. Instead, the issue before the New Jersey Supreme Court was whether a plaintiff has a right to a jury trial under the NJLAD. The Supreme

Court held that there is no right to a jury trial under the NJLAD. *Id.*

The New Jersey Legislature amended the NJLAD (apparently in response to the Court's decision in *Shaner*), to provide, "Upon the application of any party, a jury trial shall be directed to try the validity of any claim under this act specified in the suit." N.J.S.A. 10:5-13 (Supp.1990) (amended April 16, 1990).

close the independent right of judicial action for both compensatory and punitive damages.

*Erickson v. Marsh & McLennan Co., Inc.,* 227 N.J.Super. 78, 84–85, 545 A.2d 812 (App.Div.1988).[7]

The **Supreme Court** granted certiori on another issue but addressed the preemption issue anyway:

[W]e note that ... the Appellate Division ... ruled that LAD does not preempt a common law claim for wrongful discharge based on sex discrimination. Because no cross-petition was filed, we do not reach that issue. **Rather, we reaffirm what we recently declared in** *Shaner v. Horizon Bancorp.*, **116 N.J. 433 [561 A.2d 1130] (1989): if LAD creates a remedy, "it might be unnecessary to recognize or create a *Pierce*-type action to vindicate substantially the same rights and provide similar relief."** *Id.* 117 N.J. at 562, 569 A.2d 793 (emphasis added).

■ Because we are sitting in diversity, we are not free to follow our own inclinations as to the manner in which the common law should develop or to decide whether creation of a common law remedy for discrimination on the basis of race would be a wise or progressive social policy. We are instead constrained by the requirement that in diversity cases, "a federal court must be sensitive to the doctrinal trends of the state whose law it applies, and the policies which inform the prior adjudication by the state courts." *Bruffett,* 692 F.2d at 918 (citations omitted). Further, we note that state intermediate appellate decisions (as in *Erickson* ), are not automatically controlling where the highest court of the state has not spoken on the point and there is evidence that the higher court would rule otherwise. *National Surety Corp. v. Midland Bank,* 551 F.2d 21, 29 (3d Cir.1977).

It follows from a close reading of *Shaner* and *Erickson* that the Supreme Court does not intend to allow a supplementary common law cause of action where the NJLAD provides a remedy for the wrong.[8] Because there already exists a statutory remedy for plaintiff, it would be inappropriate for this court to extend New Jersey common law in this case. *See Shaner,* 116 N.J. at 454, 561 A.2d 1130; *see also, Wolk v. Saks Fifth Avenue, Inc.,* 728 F.2d 221 (3d Cir.1984). Therefore, we dismiss the claim.

### C. *Plaintiff's Claim under the New Jersey Law Against Discrimination —"NJLAD"*

Plaintiff brings a claim under the NJLAD, arguing that defendant discriminated against her on the basis of race. For

---

**7.** The Appellate Division reasoned,

Under the decisional law of this State, an at-will-employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy. *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505 (1980). New Jersey has a strong public policy designed to eradicate the cancer of unlawful discrimination. *Peper v. Princeton University Board of Trustees*, 77 N.J. 55, 80, 389 A.2d 465 (1978); *Jackson v. Concord Company*, 54 N.J. 113, 123, 253 A.2d 793 (1969). The policy emanates not only from legislation but from fundamental guarantees of our Constitution. N.J.S.A. 10:5–1 *et seq.; Peper v. Princeton University Board of Trustees, supra*, 77 N.J. at 79–80, 389 A.2d 465. *Id.*

**8.** And, in fact, the New Jersey Legislature has recently clarified the scope of remedies available under the NJLAD so that it provides the same legal remedies as would be available under the common law. Specifically,

The Legislature further finds that because of discrimination, people suffer personal hardships, and the State suffers a grievous harm. The personal hardships include: economic loss; time loss; physical and emotional stress; and in some cases severe emotional trauma, illness, homelessness or other irreparable harm resulting from the strain of employment controversies; relocation, search and moving difficulties; anxiety caused by lack of information, uncertainty, and resultant planning difficulty; career, emotion, family and social disruption; and adjustment problems, which particularly impact on those protected by this act. Such harms have, under the common law, given rise to legal remedies, including compensatory and punitive damages. The Legislature intends that such damages be available to all persons protected by this act and that this act shall be liberally construed in combination with other protections available under the laws of this State. N.J.S.A. 10:5–3 (Supp.1990) (amended April 16, 1990).

the reasons that follow, we find that plaintiff states a valid claim under the NJLAD.

N.J.S.A. 10:5–12(a) is explicit in its prohibition of private racial discrimination in employment:

> It shall be ... an unlawful discrimination:
>
> a. **For an employer, because of the race,** creed, color, national origin, ancestry, age, marital status or sex of any individual, ... **to refuse to hire or employ or to bar or to discharge ... from employment such individual** or to discriminate against such individual in compensation or in terms, conditions or privileges of employment;....

N.J.S.A. 10:5–12(a) (amended April 16, 1990) (emphasis added).

■ The New Jersey Law Against Discrimination prohibits employers, *inter alia* from terminating or discriminating against employees on the basis of race. *Id.* The statute authorizes any individual who believes she was discriminated against either to file a complaint with the Division on Civil Rights or to bring suit in the superior court.[9] N.J.S.A. 10:5–13 (Supp.1990) (amended April 16, 1990); *Ferrara v. Tappan Co.,* 722 F.Supp. 1204, 1205 (D.N.J. 1989). A final determination in either avenue of redress precludes the claimant from bringing any other action based on the same grievance. N.J.S.A. 10:5–27; *see also, Ferrara,* 722 F.Supp. at 1205. If a party finds the determination of the Director of the Division on Civil Rights to be objectionable, that party may appeal to the appellate division of the superior court. N.J.S.A. 10:5–21.

In *Peper v. Princeton U. Bd. of Trustees,* 77 N.J. 55, 81–84, 389 A.2d 465 (1978), the New Jersey Supreme Court adopted the methodology of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as the starting point for proving an illegal discrimination case under the NJLAD. *See also Andersen v. Exxon Co.,* 89 N.J. 483, 492, 446 A.2d 486 (1982). For a **discriminatory discharge** case, New Jersey has adopted a slightly modified version of the *McDonnell* criteria: to establish a *prima facie* case, the plaintiff must demonstrate by a preponderance of the evidence that plaintiff (1) belongs to a protected group, (2) that he was performing his job at a level that met his employer's legitimate expectations, (3) that he nevertheless was fired, and (4) that the employer sought someone to perform the same work after he left. *Clowes v. Terminix Int'l, Inc.,* 109 N.J. 575, 596–97, 538 A.2d 794 (1988), *citing Loeb v. Textron Inc.,* 600 F.2d 1003, 1013–14 (1st Cir.1979).[10]

---

9. In its brief, defendant argues that suits under the NJLAD should be brought only in the Division of Civil Rights or the New Jersey Superior Court. Supplemental Brief of Defendant at 14; *see* N.J.S.A. 10:5–13 (Supp.1990) (amended April 16, 1990). The relevant statutory provision provides,

   Any person claiming to be aggrieved by an unlawful employment practice or an unlawful discrimination may, personally or by an attorney-at-law, make, sign and file with the [D]ivision [on Civil Rights] a verified complaint in writing....

   Any complainant may initiate suit in **Superior Court** under this act without first filing a complaint with the [D]ivision [on Civil Rights] or any municipal office. Upon the application of any party, a jury trial shall be directed to try the validity of any claim under this act specified in the suit. All remedies available in common law tort actions shall be available to prevailing plaintiffs. These remedies are in addition to any provided by this act or any other statute. Prosecution of such suit in Superior Court under this act shall bar the filing of a complaint with the division or

any municipal office during the pendency of any such suit. *Id.* (emphasis added).

We find that this court has jurisdiction, in spite of the language of the statute. We rely on the remedial purpose of the statute, and the practice of the federal courts in granting jurisdiction in cases of this type, as the basis of our jurisdictional grant. *See, e.g., Levinson v. Prentice–Hall, Inc.,* 868 F.2d 558 (3d Cir. 1989) (addressed district court's award of punitive damages determined by jury for NJLAD violation, finding that district court had diversity jurisdiction under 28 U.S.C. § 1332); *Ferrara v. Tappan Co.,* 722 F.Supp. 1204 (D.N.J. 1989) (considered NJLAD claim upon removal from superior court); *see also, McFadden v. Burton,* 645 F.Supp. 457 (E.D.Pa.1986).

10. The court in *Loeb,* in adopting the criteria, identified the last criterion by the more expansive requirement "that his employer sought a replacement with qualifications similar to his own, thus demonstrating a continued need for the same services and skills." *Loeb,* 600 F.2d at 1013.

Establishment of the *prima facie* case gives rise to a presumption that the employer unlawfully discriminated against the applicant. The burden of going forward then shifts to the employer to rebut the presumption of undue discrimination by articulating some legitimate, nondiscriminatory reason for the employee's rejection. *Goodman [v. London Metals Exchange, Inc.], supra,* 86 N.J. [19] at 31 [429 A.2d 341 (1981)]; *Peper,* 77 N.J. at 83 [389 A.2d 465]. The plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate nondiscriminatory reason reason [sic] articulated by the defendant was not the true reason for the employment decision but was merely a pretext for discrimination. *Goodman,* 86 N.J. at 32 [429 A.2d 341]. In such cases, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff; only the burden of going forward shifts.

*Andersen,* 89 N.J. at 492–93, 446 A.2d 486. For the reasons that follow, we find that plaintiff has established a *prima facie* case. We now turn, therefore, to the discussion of the elements of the *prima facie* case.

█ It is beyond dispute that the first element—that plaintiff belong to a protected group—is satisfied, since plaintiff is an African–American. We believe that a factual dispute exists as to the second element; that is, whether plaintiff was performing her job at a level that met her employer's legitimate expectations. For example, defendant contends that plaintiff was terminated because her work was not satisfactory, but produces little evidence to support that contention. Amended Answer of Defendant at ¶ 26. The decision to fire plaintiff was made about four weeks after she was hired, although plaintiff claims that defendant intended to review her progress after six months. Yellin at 63–64, 109–111; Silverstein at 14. Finally, defendant never informed plaintiff that it was dissatisfied with her work product. Yellin at 63–64; Butler at 62, 75. The third element is satisfied since it is beyond dispute

that plaintiff was fired. Finally, we believe a factual dispute exists as to the fourth element. In particular, defendant contends that it fired plaintiff because it required an associate with more experience; after plaintiff was fired, however, defendant advertised for an attorney with an L.L.M. and 0–3 years' experience (plaintiff, too, has an L.L.M. and 0–3 years' experience). Exhibits N and O.

The evidence discussed above is sufficient to sustain her claim that defendant discriminated against plaintiff on the basis of her race. In short, we find that plaintiff has made out a *prima facie* case of discrimination. Further, defendant has not successfully rebutted the presumption of discrimination. Therefore, we find that plaintiff states a legally sufficient claim.

D. *Plaintiff's Claims of Intentional Infliction of Emotional Distress and Malicious and Oppressive Conduct*

Plaintiff bases her claims for intentional infliction of emotional distress and malicious and oppressive conduct on "the totality of the circumstances and the patently outrageous and malicious conduct of refusing to enter into an employment contract with her because she is black." *Plaintiff's Memorandum of Law in Opposition to Defendant's Summary Judgment Motion,* at p. 22 [hereinafter, "Plaintiff's Memorandum"]. By her own admission, however, plaintiff has not sought any professional help for her "emotional distress." *Id.* For the reasons that follow, this court finds that the allegations which form the basis of plaintiff's claim are insufficient as a matter of law and should be dismissed.

The relevant provisions of the *Restatement* 2d of Torts, § 46, which the New Jersey courts have adopted, provides:

Section 46: Outrageous Conduct Causing Severe Emotional Distress.

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional dis-

tress, and if bodily harm results from it for such bodily harm.

*Zamboni v. Stamler*, 847 F.2d 73, 80 (3d Cir.1988).

New Jersey courts have recognized a claim for intentional infliction of emotional distress where a physician knowingly and untruthfully told parents that their son was suffering from cancer. *Id., citing Hume v. Bayer*, 178 N.J.Super. 310, 428 A.2d 966 (Law Div.1981). New Jersey courts have also recognized a claim where a hospital was unable to locate the body of a dead baby for three weeks. *Id., citing Muniz v. United Hospitals Medical Center*, 153 N.J.Super. 79, 379 A.2d 57 (App. Div.1977).

More recently, the Third Circuit dismissed a claim for intentional infliction of emotional distress. *Id.* at 73, 379 A.2d 57. In *Zamboni*, the plaintiff alleged that the employer engaged in such constant harassment of him that the work place became oppressive, resulting in plaintiff's development of a painful and chronic spastic colon and psychological and emotional problems. *Id.* 153 N.J.Super. at 80, 379 A.2d 57. The Third Circuit assumed that plaintiff's allegations were true, but nevertheless found that the New Jersey courts would hold that the conduct does not rise to the level required for the tort of intentional infliction of emotional distress. *Id.*

We now turn to the facts of our case. First, plaintiff had difficulty presenting facts that would indicate racial prejudice during her six weeks at defendant's firm. Butler Deposition at 21–26. In fact, plaintiff appeared to enjoy her work there. *Id.* at 25–26. Second, plaintiff has not sought any professional help for emotional distress. *Id.* at 32. Moreover, plaintiff has not offered the report of a psychiatric expert in support of her emotional distress claims. *Id.* These allegations do not support a conclusion that defendant's conduct was so extreme and outrageous "as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community" as to support a claim in the New Jersey courts for emotional distress. *Zamboni*, 847 F.2d at 80, *citing Hume v. Bayer*, 178 N.J.Super. 310, 314–15, 428 A.2d 966 (Law Div.1981) (citations omitted). It follows, therefore, that this court will dismiss the claim.

## CONCLUSION

This court finds that plaintiff's federal claim under Section 1981, and her state law claims for public policy violations under Pennsylvania and New Jersey state law, intentional infliction of emotional distress, malicious and oppressive conduct, and PHRA are dismissed. Further, this court finds that plaintiff has stated a legally cognizable claim under the NJLAD. The accompanying order will be entered.

## ORDER

This matter having come before the court upon motion of defendant, Sherman, Silverstein & Kohl, P.C., for summary judgment of the Section 1981 claim and dismissal for failure to state a claim or lack of jurisdiction for the state claims for public policy violation under Pennsylvania and New Jersey state laws, intentional infliction of emotional distress, malicious and oppressive conduct, PHRA, and NJLAD, and the court having considered the submissions, and for good cause shown;

It is, this 14th day of November, 1990, hereby ORDERED that the motion of defendant, Sherman, Silverstein & Kohl, P.C., for summary judgment on the section 1981 claim (Count I) is granted; and

It is FURTHER ORDERED that the motion of defendant, Sherman, Silverstein & Kohl, P.C., for dismissal of state law claims for public policy violation under Pennsylvania and New Jersey state law (Count II), intentional infliction of emotional distress (Count IV), malicious and oppressive conduct (Count III), and PHRA (Count V), is granted; and

It is FURTHER ORDERED that the motion of defendant, Sherman, Silverstein & Kohl, P.C., for dismissal of the claim under the NJLAD (Count VI) is denied.